CASE 90—ACTION BY PAT CARROLL'S ADMR. AGAINST CITY OF LOUIS-
VILLE AND L. & N. R. R. CO. FOR CAUSING DEATH OF PLAIN-
TIFF'S INTESTATE.—MARCH 2.

# Carroll's Admr. v. City of Louisville, &c.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    AFFIRMED.

RAILROADS—STREET CROSSINGS—DEFECTIVE CONSTRUCTION MADE BY
RAILROAD—PLANNED BY CITY—NOTICE—CONTRIBUTORY NEGLI-
GENCE—PEREMPTORY INSTRUCTIONS FOR DEFENDANTS.

Held:   1. Where city authorities prescribe, and a railroad company
follows a plan of constructing a street crossing claimed to be de-
fective, both are chargeable with knowledge of the plan, and
the question of notice is immaterial.

2. Kentucky Statutes, 1903, section ~2825, vests in the board of pub-
lic works of the city of Louisville exclusive control over the con-
struction of its streets.   This board adopted a plan for the con-
struction of a railroad crossing by which the space between the
tracks intersecting the street and those between the rails was
to be filled by placing parallel therewith iron or steel rails
about three inches apart, between which was to be placed ce-
ment or some concrete substance, and this plan was followed
by the railroad company.   Plaintiff's intestate, while riding
horseback, about nine o'clock at night, at a rapid pace, was
thrown by his horse slipping on the crossing, and sustained
fatal injuries.   There was testimony that this sort of crossing
was more durable than wooden crossings, and less liable to get
out of repair, but also that horses were more liable to slip
thereon than on a wooden crossing.   HELD, that a peremptory
instruction for the defendants, the city and the railroad com-
pany, was proper.

PRYOR & SAPINSKY, MATT. O'DOHERTY AND THOS. WALSH,
FOR APPELLANT.

### PEREMPTORY INSTRUCTION IMPROPER.   WHEN.

1. It is now *elementary law* in this State that, "Where the
evidence conduces *in any degree* to establish the right of recov-

Carroll's Admr. v. City of Louisville, &c.

ery, it is *improper* to give a peremptory instruction for the defendant." L. & N. R. R. Co. v. Howard, 82 Ky., 212; Shelby v. C. N. O. & T. P. R. R. Co., 85 Ky., 224; Ziegler v. Robinson, 12 R., 558.

2. Likewise, "A peremptory instruction for a defendant ought *not* to be given unless, after admitting *every fact* proven by plaintiff's evidence to be true, as well as all reasonable inferences that can be drawn therefrom, the plaintiff has failed to establish his case." Fugate v. City of Somerset, 16 R., 807.

3. See also the very recent utterance of this court to the effect that, "It is a *well established rule* in this State that if there is *any evidence* conducing to show a right of recovery in the plaintiff, it is improper for the court to give a peremptory instruction for the defendant even *though* the court may be of the opinion that the verdict should be for the defendant. This is a *question of fact which must be left to the determination of the jury.*" C. & N. Ry. Co. v. Ogles, 24 R., 2162.

Applying the above proposition of law to the pleadings and proof in the case at bar, it follows that your Honors must necessarily reverse the judgment "appealed from."

### AUTHORITIES CITED.

1. Peremptory instruction improper—when. L. & N. R. R. Co. v. Howard, 82 Ky., 212; Shelby v. C. N. O. & T. P. R. R. Co., 85 Ky., 224; Ziegler v. Robinson, 12 R., 558; Fugate v. City of Somerset, 16 R., 807; C. & N. Ry. Co. v. Ogles, 24 R., 2162.

2. Law governing the case at bar. Groves v. Louisville Ry. Co., 22 R., 599; Am. & Eng. Ency. of Law, p. 983; Pierce on R. R., p. 248; Wood on R. R., vol. 1; Gillette v. Western R. R. Corporation, 8 Allen, 560; Railway Co. v. Nolan, 53 Texas, 148, 149; Cline v. Crescent City R. R. Co., &c., 43 La., 332; Gould v. City of Topeka, 49 Am. Reports, 496 (32 Kan., 485); Fugate v. City of Somerset, 97 Ky., 48; City of Evansville v. Decker, 84 Ind., 325.

3. Evidence in the case. Town of Falmouth v. Woods, 16 R., 317; Robinson v. Belknap, 7 R., 605.

HELM, BRUCE & HELM, FOR L. & N. R. R. Co., H. L. STONE FOR CITY OF LOUISVILLE.

### STATEMENT OF POINTS.

1. There is no evidence that the crossing was out of repair at the date of the accident, nor that the character of crossing was dangerous.

2. There is no evidence that the crossing caused the accident, but the contrary is shown by appellant's evidence.

3. The board of public works in the city of Louisville is vested by statute with exclusive control over the streets, and it in the exercise of this power, directed the L. & N. R. R. Co. to put in the character of crossing which was adopted and which is the subject of criticism in this case.

The company had no option but to obey and is not responsible for any accident which results from the character of the crossing.  Young v. Yarmouth, 9 Gray (Mass.), 386; Commonwealth v. Boston, 97 Mass., 556;. C., St. L. & N. O. R. R. Co. v. L. & N. R. R. Co., 22 Law Rep., 660.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

The appellant, who was the plaintiff below, brought this action to recover damages for the death of his intestate, which he alleges resulted from the negligence of the appellees, the city of Louisville and the Louisville & Nashville Railroad Company, in the construction of the railroad crossing at the intersection of Third and A streets, in the city of Louisville.  The allegation of negligence recited in plaintiff's petition is as follows: "On or about April 1, 1901, the defendants arranged the crossing at Third and A streets in the following manner, to wit:  That beginning with the extreme northern rail of the track to the extreme southern rail thereof there was placed, the entire length of said crossing, running parallel with said tracks, iron or steel rails about three inches apart, and between these rails was placed cement, or some concrete substance; that it was the duty of said defendants, and each of them, to keep said intersection or crossing of said public highway in a reasonably safe condition for the use thereof by the public, but that the manner of said crossing, as above set forth, was not reasonably or at all safe, but was, on the contrary, highly dangerous, unsafe, and insecure; that said rails became, and were at all

times, dangerously smooth and slippery, so that a horse step-
ping thereon would slip and fall; that said dangerous, in-
secure, and unsafe condition of said crossing was well known
to the defendants and each of them, or could have been known
to them and each of them by the exercise of ordinary care,
for such a period of time preceding the happening
of the accident hereinafter mentioned to have per-
mitted and allowed said defendants to have remedied
same, and make said crossing safe and secure, but
that notwithstanding all of the above, the said defendants
permitted said crossing to remain and continue in said dan-
gerous and unsafe condition; and that on August 8, 1901,
plaintiff's decedent, Pat Carroll, while riding horseback over
and along Third street, going in a southerly direction, ap-
proached said crossing, and while proceeding across same
his horse, because of the said dangerous, unsafe, and inse-
cure condition of said crossing, and especially the iron or
steel rails which composed same, slipped and fell, with the
result that said Pat Carroll was thrown violently to the ground,
occasioning him such severe injuries that his death occurred
therefrom within a few hours thereafter. Plaintiff says that
the death of his son was brought about and occasioned solely
and altogether by the negligence and carelessness on the
part of the defendants, and each of them, in the matters
aforementioned."

The allegations of negligence were traversed by separate
answers, and the contributory negligence of the plaintiff's
intestate was relied on. No issue was made as to the de-
scription of the construction of the crossing between the
rails of the railroad track. Upon these issues the case went
to trial, and at the conclusion of the testimony of the plaintiff
the circuit court directed a verdict for the defendants. To

this ruling of the trial court plaintiff excepted, and a judgment having been rendered on the verdict, he has appealed.

It appears from the bill of evidence that two tracks of the Louisville & Nashville Railroad Company, about eight or ten feet apart, occupy A street as its intersection with Third, and have so occupied it for many years; that Third street is paved with asphalt, and is one of the most generally used streets of the city, both for light and heavy hauling; that about the first of April, 1901, a little over four months before the accident which resulted in the death of appellant's intestate, the Louisville & Nashville Railroad Company constructed the crossing across their railroad tracks at the intersection of the two streets, in strict conformity with the plan therefor which had been prescribed by the board of public works of the city of Louisville; and that a similar design for railroad crossing had been prescribed and followed by the railroads at many points in the city. The gist of the complaint is that the plan or design of the crossing was imperfect and dangerous. There is no allegation that there had been any substantial change or deterioration in the crossing subsequent to its construction and previous to the accident. During the progress of the trial the plaintiff attempted to show by a witness that the original design of the crossing required that the filler rails should be covered over by cement to the depth of about an inch, and that the defendants had permitted this coat to wear off and to expose the surface of the iron rails. The defendants objected to the admission of this testimony on the ground that the alleged negligence charged went only to the design of construction, and not that it had been permitted to become out of repair. This objection was overruled by the trial court on the ground that the plaintiff had a right to so amend his cause of action that

the pleadings would conform to the proof. But no such amendment was ever offered, and it is apparent from the general design of the crossing that it would have been practically impossible to have covered the iron rails with a cement coat which would have withstood for any length of time the pressure of heavily loaded wagons passing over it. To show that the design was dangerous, plaintiff introduced a witness who testified that he was a surveyor; that a crossing constructed in the manner of this one presented a smoother surface than a crossing constructed of oak planks; and that horses were more liable to slip upon such a crossing than upon a wooden one. He admitted, however, upon cross-examination, that there was no question that the design of this crossing was more durable and permanent in its character than wooden crossings, and less liable to get out of repair. Several other witnesses, living in the immediate vicinity of the crossing, were permitted, over the objection of the defendants, to prove that they had seen horses at various times tumble and slip upon this crossing. It does not clearly appear from their testimony when these accidents occurred, but we think it fairly inferable that they were so close in point of time to the accident which resulted in the death of plaintiff's intestate as to make the testimony competent, although there is decided conflict in the authorities as to the competency of this kind of evidence for any purpose except to bring home to the city and railroad company notice of the dangerous character of the crossing. That was immaterial, however, in this case, as it is admitted that the railroad company constructed the crossing under the direction and in accordance with the design prepared by the city, and both were chargeable with knowledge of the plan. It also appears from the testimony that decedent was riding at a

very rapid pace on horseback out Third street about 9:30 o'clock on the night of August 8, 1901, and that while crossing the railroad tracks his horse stumbled or slipped and fell, and that he was thrown to the street, receiving the injuries which caused his death. There is some discrepancy in the testimony as to whether the horse fell while on the track of the railroad or in the street between the two tracks.

While it is the duty of the city to keep its streets in a reasonably safe condition for ordinary travel, a corresponding duty rests on those who legitimately use the streets to avoid being injured. The rule is admirably stated in Dillon on Municipal Corporations (section 1015) as follows: "The liability is not that of a guarantor of the safety of the traveler. The corporate authorities are only bound to use reasonable skill and diligence in making the streets and sidewalks safe and convenient for travel. It is under no obligation to provide for everything that may happen upon them, but only for such things as ordinarily exist, or such as may be reasonably expected to occur."

Section 2825 of the Kentucky Statutes of 1903, which is a provision of the charter of the city of Louisville, vests in the board of public works exclusive control over the construction of its streets. They had the right, and it was their duty, to prescribe a plan for the crossing of railroad tracks, at the intersection of the public streets of the city, and it was the duty of the railway company to conform such requirements in this respect as the board of public works might prescribe. It is difficult for the most competent engineers to devise a plan for such a crossing that will meet the requirements of safety, durability, and convenience. In passing upon the liability of a city growing out of an alleged defective design or plan of construction, this court in Teager

v. City of Flemingsburg (109 Ky., 746, 22 R., 1442) 60 S. W., 718, 53 L. R. A., 791, used this language: "It is argued for the city in this case that the plan of street improvements is one within the discretion of the council, and not to be interfered with by the courts. Some authority is cited from other States supporting this contention. But we rather incline to the view that while the city governing body may exercise its discretion in the selection of a plan of street improvement, if the plan adopted is one palpably unsafe to travelers the city would be liable. But when the plan is one that many prudent men might approve, or where it would be so doubtful upon the facts whether the street, as planned or ordered by the city governing board, was dangerous or unsafe or not, that different minds might entertain different opinions with respect thereto, the benefit of the doubt should be given the city, and it should not be held liable."

While there is testimony that a horse is more likely to slip upon a crossing of the character complained of than a wooden one, the testimony fails to show any defect in its construction, or that it was not, all things being considered, of the best and most suitable design at that point. Undoubtedly horses are more liable to slip on asphalt than on macadam streets, and more liable to slip upon macadam than upon the ordinary country dirt road, but this is no ground or reason for the condemnation of asphalt streets. The necessities of modern city life require, next to safety, permanence and durability in the construction of the streets and crossings. The testimony in this case conduces to show that the unfortunate accident which resulted in the death of plaintiff's intestate was attributable to the rapid and negligent rate at which he was traveling when he attempted to pass the .

railroad crossing, rather than any defect in the crossing itself. It therefore follows, in the absence of testimony conducing to show that the accident complained of was attributable to the defective construction of the crossing, that the peremptory instruction should have gone.

Judgment affirmed.