# City of Lebanon v. Graves.

(Decided January 22, 1918).

## Appeal from Marion Circuit Court.

1. **Municipal Corporations—Pavements—Plan for Construction of—Liability of City.**—Municipal authorities in adopting and executing plans for street improvements have broad latitude and discretion, and unless the improvement when made according to the plan is unsafe and dangerous for the use for which it was intended the city will not be liable for accidents caused by plan.

2. **Municipal Corporations—Pavements—Plan for Construction of—Duty and Liability of City.**—A city is under a duty to keep its pavements in reasonably safe condition for public travel, and if, pursuant to a plan adopted it so constructs them as that they are not reasonably safe for public travel, its liability will be the same as if, after their construction, it had permitted them to become unsafe for public travel.

3. **Municipal Corporations—Pavements—Plan for Construction of—Duty and Liability of City.**—The duty of a city to keep its streets and pavements in reasonably safe condition for public travel is a continuing one, and it is immaterial whether the unsafe and dangerous condition is due to a defective plan, or to conditions that the city permits to come up after the construction of the street pursuant to the plan.

4. **Municipal Corporations—Pavements—Plan for Construction of—Duty and Liability of City.**—When a pavement is reasonably safe for public travel and is maintained free from dangerous defects or obstructions the city is not liable for accidents to travelers merely because the plan or method of construction was not as safe or accessible or convenient as it might have been.

5. **Municipal Corporations—Streets and Pavements—Grade to Natural Surface.**—A city may build its streets and pavements on a grade to conform to the natural surface of the ground, or on an artificial grade, without by reason of this fact alone subjecting itself to liability to persons who may fall on account of the grade.

6. **Municipal Corporations—Streets and Pavements—City Not Insurer of Safety of Travelers.**—A city is not the insurer of the safety of persons who travel its streets or pavements.

7. **Municipal Corporations—Streets—Action for Negligence—Question for Jury.**—If upon the facts there are reasonable grounds for difference of opinion concerning the proposition whether the city exercised ordinary care to keep its streets or pavements in reasonably safe condition for travel, the question is for the jury, but where there is no ground for reasonable difference of opinion, the question is for the court.

8. **Municipal Corporations—Streets and Pavements—Action for Damages—Contributory Negligence.**—Where there is a defect in

the pavement the question of contributory negligence is generally for the jury; but when the defect is so obvious as that a traveler in the exercise of ordinary care could not fail to discover it in time to avoid the danger, his contributory negligence will defeat a recovery.

9. Municipal Corporations—Notice of Defective Condition of Pavement—Sufficiency of.—Where a pavement was permitted to remain in an unsafe and dangerous condition for three years, the city will be charged with notice of its condition.

10. Municipal Corporations—Pavements—Smooth, Slippery Concrete Surface—Dangerous Condition of—Question for Jury.—Where a city constructed or permitted to be constructed a concrete pavement with a smooth, slippery surface on a grade of two inches to the foot, and numbers of persons slipped or fell on this pavement, it was a question for the jury whether the pavement was maintained in a reasonably safe condition for public travel.

11. Municipal Corporations—Evidence—Other Accidents.—In a suit to recover damages for personal injuries caused by a dangerous and defective pavement, it is competent for the plaintiff to show that other persons met with accidents at the same place.

CHARLES C. BOLDRICK and W. H. SPRAGENS for appellant.

P. K. McELROY and R. S. McELROY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Mrs. Graves, sustained injuries by falling on a concrete pavement in the city of Lebanon, and in this suit to recover damages there was a verdict and judgment in her favor, and the city appeals.

On the main street, and in the business quarter, of the city the natural formation of the surface of the ground on which the pavement was laid was not level, and it appears that in the concrete pavement, which followed the natural formation of the ground, there was a gradual elevation carrying it from the lower level to the higher one. In this rise or elevation there was a block of concrete about six feet wide with a smooth, and—as said by some of the witnesses—a very slick surface; that sloped with the pavement about two inches to the foot and also sloped toward the curbing, forming at its highest point what is described by the witnesses as a bulge in the pavement; and it was at or near the highest point in this block of concrete that Mrs. Graves, while walking along the pavement in the usual way, slipped and fell.

It further appears that this block of concrete had been put in the pavement when it was reconstructed about

three years before the accident to Mrs. Graves and that Mrs. Graves, who had been a resident of Lebanon for a number of years, had many times walked on the pavement at this place without meeting with any mishap, although it had for some three years been in the same condition that it was when she fell.

As illustrating the danger to which pedestrians were subjected while walking on this sloping block of concrete, Edgar Bowman, who was employed as a clerk in a store fronting on the pavement at this point, was asked and said: "Q. Mr. Bowman, I will get you to state whether or not the place where Mrs. Graves fell is slick or rough. A. Very slick. Q. State whether or not it is slicker during wet weather or dry weather. A. I can't see any difference; it's just about the same; about as many people fall when it is dry as they do when it is wet. Q. On that sloping place, the exact place where Mrs. Graves fell, upon the occasion complained of, or within a few inches of that place, state whether or not you have seen anybody fall or slip there at that place. A. At the place where she fell? Well, I don't know whether it would be the exact place, but I've seen lots and lots of people fall there. Q. How often have you seen people slip and fall there? A. Every day since that new place has been down there. Q. How long has it been put in there? A. I think about two years."

James Phillips, after saying that he was a resident of Lebanon and very familiar with the pavement in question, was asked and answered the following questions: "Q. State whether or not you have seen people slip or fall prior to April 22nd (that is, the day Mrs. Graves fell) at the place on the pavement where Mrs. Graves fell. A. I think I have. I have seen several fall there. Q. State whether or not you have seen anybody slip there since this accident. A. I think the last one was about ten or twelve days ago. A boy slipped there and fell."

J. E. Edmonds, who had been engaged in the mercantile business on Main street near this place, many years, was asked: "Q. Do you know where Mrs. Graves slipped and fell? A. Yes, sir; I know about where she fell. Q. State whether or not you have seen anybody slip or fall at the place where Mrs. Graves fell. A. Yes, sir. Q. State whether or not at that place you have seen anybody slip or fall prior to April 22, 1916. A. I have seen quite a number slip and fall. Some of them fall and some

of them just slip. Q. How often would you say, Mr. Edmonds? A. I don't exactly know. There is hardly a day passes that there is not somebody that slips there. Q. Since April 22, 1916, have you seen anybody slip or fall at that particular point? A. I have. Q. How many would you say? A. Quite a number. I don't know exactly how many. I never paid any particular attention or kept any account of them.''

Dr. J. T. Elliott, whose place of business was nearby where Mrs. Graves fell, testified: ''Q. State whether or not you go down on that side of the street. A. Well, sometime I do, but I do not always get clear in front of it. I go out of the way of it. Q. I will ask you whether you are acquainted with the sloping place in the pavement. A. I ought to be; I have slipped there several times. Q. Have you slipped there since that accident? A. No, I haven't, because I go around it.''

Louis Edmonds, whose store was next door to Bowman's in front of whose place Mrs. Graves fell, testified: ''Q. State whether or not prior to the accident to Mrs. Graves you have seen any one slip or fall there at that place. A. Yes, I have. Q. How often? A. Oh, I expect I have seen a hundred people fall there or slip. It was a very frequent occurrence, a daily occurrence. Q. State whether it is slicker when it is dry or wet. A. It is slicker when it is dry. It was a dry day when Mrs. Graves fell.''

There was no attempt to contradict the evidence of these witnesses as to the numbers of times persons had fallen or slipped on this pavement at this point.

There was also evidence by experienced concrete men who had made many concrete pavements that the surface of this elevated block of concrete could have been made reasonably safe for public travel in five or six different ways that would have converted the smooth and slippery surface into a rough or grooved surface.

But conceding that the surface of the pavement at the point in question was so smooth and slippery as to cause many persons walking on it to fall or slip, and that this condition had existed for some three years before the accident to Mrs. Graves the argument is made that as the surface of the ground had a natural grade or elevation the city authorities had the right to construct or permit the construction of a pavement conforming to this natural grade; that when a city, pursuant to a plan

adopted by its council, constructs a street or pavement that is free from ordinary defects or obstructions, although it may run at an elevation conforming to the natural surface of the ground, the city cannot be held liable in damages for injuries that may happen to travelers who are themselves exercising care for their own safety.

In support of this contention our attention is called to Tealger v. City of Flemingsburg, 109 Ky. 746, in which the court adopted the prevailing rule that municipal corporations in the improvement of streets and public places have the right to adopt such plans and specifications as appear to them reasonable and proper under the circumstances without subjecting the city to liability for accidents that may happen on account of the nature of the plan adopted, in conformity to which the improvement is made.

But the court was careful to say: "But we rather incline to the view that, while the city governing body may exercise its discretion in the selection of a plan of street improvement, if the plan adopted is one palpably unsafe to travelers, the city would be liable. But when the plan is one that many prudent men might approve; or where it would be so doubtful upon the facts whether the street as planned or ordered by the city governing board was dangerous or unsafe or not—that different minds might entertain different opinions with respect thereto—the benefit of the doubt should be given the city, and it should not be held liable." To the same effect is Carroll's Admr. v. City of Louisville, 117 Ky. 758.

Again, in Clay City v. Abner, 26 Ky. L. Rep. 602, a street accident case, the court said: "We understand the rule to be that it is for the town council to determine whether a public way shall be improved at all, and if it is, the manner and extent of it. They are selected particularly with reference to their fitness and interest in such matters. Unless the plan that they adopt is one so obviously dangerous as would show a failure to consider, or a purpose to misconstruct the work, the judgment of the governing body of the town as to the plan is conclusive. The town is not liable in damages for accidents that may occur on the highway, because the very best plan or even a better one in the view of the jury, was not adopted." To the same effect is City of Louisville

v. Norris, 111 Ky. 903; Buckman v. City of Covington, 143 Ky. 444.

In McCourt v. City of Covington, 143 Ky. 484, another street accident case, the court said: "The city has exclusive control in the construction of its streets, sidewalks, sewers, catch basins, etc., and hence may determine how the sewers shall be run and where the catch basins shall be located, and no ground of complaint is afforded because the sewers are so run as to require the catch basins to be located in the sidewalk, unless the plan adopted for their construction is inherently dangerous, or, after being constructed, they are suffered or permitted to become and remain out of repair."

In the late case of Tudor v. City of Louisville, 172 Ky. 429, the court, after referring to a number of authorities, said: "We would not be understood as holding that a city would not be liable under any circumstances because of smoothness and slipperiness of a sidewalk, either as originally constructed, or becoming such by use, resulting in its becoming dangerous or unsafe for travelers. If such conditions, accompanied with such danger, are shown to exist, the place could not be said to be reasonably safe, under the law, and if a city has actual knowledge thereof, or constructive knowledge, as herein defined, its liability would be thereby established."

In Stone v. City of Seattle, 30 Wash. 65, 67 L. R. A. 253, the court said: "We think in any event, however, that the weight of authority is against the appellant's contention, and that a city cannot relieve itself from liability for defective streets because the defect may be part of an original plan of construction. . . . We think it was a question for the jury in the case at bar whether the city neglected to keep the street in safe condition, and it is immaterial whether the defect arose from the original construction or from subsequent causes." To the same effect is Giaconi v. Astoria, 60 Or. 12, 37 L. R. A. (N. S.) 1150. And in the extensive note to the Stone case there will be found many authorities on this subject.

The principle to be gathered from the authorities cited, as well as from many others discussing the same question, is that municipal authorities, in adopting and executing plans for street improvement, have broad latitude and discretion as to the character of the street improvement, when and where it shall be made, and the material out of which it shall be constructed; and their dis-

cretion in these respects will not be interfered with by the courts, or its exercise allowed to be made the basis of an action against the city for damages growing out of personal injuries, unless the improvement when made according to the plan was unsafe and dangerous for the use for which it was intended. In other words the city is under a duty to keep its streets in reasonably safe condition for public travel; and if, pursuant to a plan adopted by the city, it so constructs them in the first instance as that they are not reasonably safe for public travel, but, on the contrary, are unsafe and dangerous, its liability will be the same as if, after their construction, it had permitted them to become unsafe and dangerous for public travel, or had allowed them to get in a condition not reasonably safe for travel.

It would appear, therefore, that it makes little if any substantial difference so far as the liability of the city is concerned whether the unsafe and dangerous condition of the street was due to a defective plan, or due to conditions that the city permitted to come up after the construction of the street pursuant to a plan that contemplated a street reasonably safe for public travel; and that when a city undertakes to construct or reconstruct a street or pavement, it is under a duty to so construct and maintain it as that it will be reasonably safe for public travel; and this duty is a continuing one, and no plan will justify the construction of a pavement so slick and slippery as to be unsafe and dangerous.

This is the measure of its duty to the public, and it is within the limits of this measure of duty that the latitude and discretion of city authorities in constructing and reconstructing streets and pavements is confined. And so whenever the street or pavement, after it has been constructed or reconstructed, is reasonably safe for public travel and is maintained free from dangerous defects and obstructions, the city is not to be held accountable for accidents that may befall travelers merely because the plan or method of construction was not as safe or accessible or convenient as it might have been. Accordingly, a city may build its streets and pavements on a grade to conform to the natural surface of the ground, or on an artificial grade, without, by reason of this fact alone, subjecting itself to liability to persons who may slip or fall on account of the grade, because the law does

not put upon cities or towns the duty of building or main-
taining its streets on a level, or of keeping the surface
even and perfect. In almost every city and town in the
state the natural conditions are different, and the plans
adopted for street improvement vary according to the
taste and judgment of the persons having charge of muni-
cipal affairs; and so it is a matter of common knowledge
that in scarcely any two cities or towns are the pavements
or streets made on the same grade, or constructed of the
same width, or out of the same material, or in the same
manner. In some places steps are made in pavements to
overcome the grade, and in others the pavement follows
the surface of the natural grade, with its elevations and
depressions.

It has also been held in many cases, as said by this
court in Town of Elsmere v. Tanner, 158 Ky. 681, that "a
city is not the insurer of the safety of persons who travel
its streets or sidewalks, and is not to be held liable in
damages for every injury that may befall a traveler who
through thoughtlessness or negligence meets with some
accident. It often happens that people stumble or slip
and fall and hurt themselves while walking in safe places,
and no amount of care or dilligence on the part of a city
or town could enable it to prevent accidents of this sort.
They happen every day in the year, to young as well as
old, and strong as well as weak, and if cities were re-
quired to insure the limbs and life of every person who
happened to get hurt on its streets, they would soon be
bankrupted by recoveries in damage suits." To the same
effect are Carroll's Admr. v. City of Louisville, 117 Ky.
758; Breckman v. City of Covington, 143 Ky. 444.

It has also been laid down in many cases that if upon
the facts there are reasonable grounds for difference of
opinion concerning the proposition whether the city exer-
cised ordinary care to keep its pavements or streets in a
reasonably safe condition for travel, the question is for
the jury; but if there is no reasonable ground for reason-
able difference of opinion on this subject, the trial court
should rule the question as a matter of law; Town of
Elsmere v. Tanner, 158 Ky. 681: City of Dayton v. Lory,
169 Ky. 94.

In this case, however, we think there was ample room
for reasonable difference of opinion as to whether this
pavement was reasonably safe for public travel. Indeed,
the decided weight of the evidence shows that it was

palpably unsafe and dangerous for public travel. Whenever a particular place in a pavement is laid in such condition and so remains for about three years as that travelers walking on it are seen to slip or fall almost every day, and others, who are familiar with its danger, avoid it altogether by going out in the street, it is manifest that such a pavement is unsafe and dangerous. We have, therefore, no difficulty in ruling that the trial court properly submitted the case to the jury.

The instructions are criticised, but we think they submitted fairly to the jury the issues in the case. The contention, that the instruction submitting the question of contributory negligence was not in proper form, is not well taken. Really, it would not have been error to have failed to give any instruction on this subject, because Mrs. Graves was not guilty of any contributory negligence. She was walking on the pavement in the usual and customary way, and she had the right to walk at the point where she fell. It is true, as we have said, that this was a dangerous place; that many people slipped and fell there; but many others walked over it without slipping or falling. It was more dangerous than it appeared to be. A traveler looking at it as persons of ordinary pruduence ordinarily do look at pavements on which they are walking, would not know or appreciate the danger, because there was no defect in the pavement or its construction calculated to arrest the attention of the ordinarily careful pedestrian.

Mrs. Graves had a slight spell of temporary sickness on the day of the accident and shortly before it happened, but there is no showing that this indisposition interfered with her ability to walk as she usually did, or with her capacity to take such care of herself as she generally exercised. And so there was no reason why the court should have given the offered instruction that if her illness or sickness contributed to or helped to cause the fall or injury, they should find for the city.

It is further said that as she had resided in Lebanon for more than nineteen years and during that time had passed up and down Main street and over the point where she fell, she must have been acquainted with the dangerous condition of the pavement at this place and therefore assumed the risk of walking on it, and her negligence should defeat a recovery.

There is, however, no evidence that she knew the danger attending persons who attempted to walk on the pavement at this place; but if she had known that other persons had slipped or fallen at this place, this circumstance would not deny her the right of recovery on the ground of contributory negligence or assumption of risk, because it is only when a defect is so obvious as that a traveler in the exercise of ordinary care could not fail to discover it in time to avoid the danger, that he will be guilty of such contributory negligence as would defeat his right of recovery in an action against the city for its breach of duty in maintaining an unsafe and dangerous pavement.

The general rule is that where there is a defect in the pavement, or an obstruction such as can easily be seen and avoided, the question of contributory negligence is for the jury; City of Dayton v. Lowndes, 174 Ky. 707; Merchants Ice and Cold Storage Co. v. Bargholt, 129 Ky. 60; City of Ashland v. Boggs, 161 Ky. 728; City of Dayton v. Lory, 169 Ky. 94.

The case of the City of Covington v. Manwaring, 113 Ky. 592, is relied on by counsel for the city as announcing a different rule, but we think not. In that case, Manwaring sustained injuries by falling upon the pavement when he struck his toe upon a brick that the root of a tree had pushed above the level of the pavement; and the court, under the exceptional facts of that case, held that Manwaring should be charged with notice of the condition of the brick which was within a few feet of the door of a store in which he worked, and consequently was not entitled to recover damages. The facts of that case are so very different from the facts of this that it cannot be regarded as controlling authority.

It is further complained that error was committed in allowing the admission of evidence of other accidents at this place by the witnesses who testified that they had seen numbers of other persons slip and fall there before Mrs. Graves fell.

We have, however, adopted the rule laid down by the supreme court of the United States in District of Columbia v. Armes, 107 U. S. 519, 27 L. Ed. 618, where the court, in commenting on the admissibility of this kind of evidence, said: "They were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk in its unguarded condition. The

frequency of accidents at a particular place would seem to be good evidence of its dangerous character; at least, it is some evidence to that effect. Persons are not wont to seek such places, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and the pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject.

"Besides this, as publicity was necessarily given to the accidents, they also tended to show that the dangerous character of the locality was brought to the attention of the city authorities." Yates v. City of Covington 119 Ky. 228; City of Covington v. Westbay, 156 Ky. 839; City of Covington v. Visse, 158 Ky. 134.

It is further claimed that the city had no notice of the condition of this pavement; but there is no merit in this contention. The business house of Mr. Murray, who at the time of this accident had been the mayor of this city for some three years, was within a few feet of the place where Mrs. Graves fell, and other citizens, who had been for years, and were at the time of the accident engaged in business in the immediate neighborhood, were members of the council, and it is wholly improbable that the notoriety attending the use of this pavement on account of the numbers of persons who slipped or fell there, should not have been brought time and again to their attention. At any rate, when there has remained at one point in a pavement for three years a place so conspicuously unsafe and dangerous for public travel as this is shown to have been the city authorities cannot excuse their failure to remedy the condition upon the ground that they had no notice of it. It will be presumed they had notice.

We may also here add that the fault in this pavement was not so much in the grade as it was in the slippery surface of the pavement which could easily have been remedied and which it was negligence to permit to remain.

Some other minor alleged errors are pointed out in brief of counsel for the city, but having sufficiently covered the case, and finding no prejudicial error, the judgment is affirmed.