## DISTRICT OF COLUMBIA v. CHESSIN.
### No. 5500.

Court of Appeals of the District of Columbia.
Argued May 6, 1932.
Decided June 13, 1932.

Rehearing Denied Oct. 8, 1932.

William W. Bride and Robert E. Lynch, both of Washington, D. C., for appellant.

T. Morris Wampler, of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee obtained a verdict and judgment in the Supreme Court of the District in the sum of $10,000 against appellant. (We shall hereafter speak of the parties as plaintiff and defendant.) Her declaration alleges that on the 7th of January, 1929, she was a passenger in an automobile then being driven at a lawful and proper rate of speed along Irving street northeast, in Washington. In passing over the intersection of Sixteenth street with Irving street, she claims to have sustained severe and permanent injury due to the presence of deep holes or depressions in the gutters crossing Irving street along the sides of Sixteenth street. Defendant's plea denied that there were any depressions at the intersection in question which rendered the street dangerous or unsafe to travel, or that it had any knowledge or notice that the place in question was dangerous or unsafe.

The evidence discloses that plaintiff's husband was driving a 1924 Jewett touring car; that his daughter, Adele, 18 years of age, was riding on the front seat with him; and that plaintiff and a Mrs. Levenson occupied the rear seat of the car. The accident occurred between 11:30 p. m. and midnight. Plaintiff's husband testified he was operating the automobile at approximately 12 miles an hour, or between 12 and 15 miles an hour, and, when the car reached the east gutter of Sixteenth street at its intersection with Irving street, there was a tremendous bump and the car proceeded across the intersection, and, upon reaching the gutter on the far side of Irving street, there was another bump, the result of which was to throw the occupants of the rear seat up against the top and down onto the floor of the car.

There are 55 separate assignments of error. Some are supported by proper bill of exceptions. Most are not. In the main the errors assigned relate to the admission or re-

jection of evidence and to improper conduct and argument on the part of plaintiff's counsel. The entire record of the trial is included in a single bill of exceptions, and this embraces not only the evidence stated in narrative form, but the entire speech of plaintiff's counsel in the opening and closing arguments to the jury.

As we may not consider any assignment of error not covered by proper exception, we have had to go carefully through the record of nearly 150 pages to determine what portions might and what might not be properly considered on this appeal. The first eight assignments are based on errors which, it is claimed, resulted in permitting plaintiff's witness, Anderson, to testify as an expert, and particularly to express opinions in relation to the dangerous character of the construction of the highway and the effect on the occupants of an automobile in the use of the highway at the point in question. Anderson testified he was a full colonel in the Engineer Officers' Reserve Corps, United States Army, and had been engaged in engineering work for 22 years; that he had been assistant professor of engineering at the University of Wisconsin, and had been employed by the war department as an engineer for the period of 15 years, 2 years in the Bureau of Mines in research work in engineering, and from 1917 to 1921 in the army service as an engineer officer, and since 1921 in private practice as consulting engineer and architect. Prior to the time he was in the army, he had been for a short time in the office of the city engineer, Madison, Wis.; that he had designed and superintended construction of the roads in the Garfield Hospital grounds, those in the American University grounds, the Marjorie Webster Girls' School, and a number of other institutions; and that he was at the time of his testimony engaged in building roads on the Schaeffer property, Rhode Island avenue and Four-and-a-Half street; that he had built at least 100 miles of roadway, and that his experience extended from coast to coast and covered various types of roads to meet the requirements and conditions of the locality. We think this was quite enough to qualify the witness to testify as an expert. Ordinarily the qualification of an expert witness, that is to say, his knowledge, skill, and experience, to express an opinion on a particular matter in issue is a question for the trial court, and the exercise of this discretion will not ordinarily be disturbed by an appellate court. Chateaugay Ore & Iron Co. v. Blake, 144 U. S. 476, 484, 12 S. Ct. 731, 36 L. Ed. 510; Stillwell & B. Mfg. Co. v. Phelps, 130 U. S. 520, 9 S. Ct. 601, 32 L. Ed. 1035; Montana R. Co. v. Warren, 137 U. S. 348, 11 S. Ct. 96, 34 L. Ed. 681; Inland & S. Coasting Co. v. Tolson, 139 U. S. 551, 11 S. Ct. 653, 35 L. Ed. 270. We think the discretion exercised by the trial court in this instance was not erroneous.

The specific answers of this witness to which objection was made and exception taken related in the first place to his evidence that the highway at the place or point in question was shown by measurements to have had an extreme drop or incline of 11½ inches from the center or crown, and his further statement that the standard rule in such cases would have permitted a maximum drop of not exceeding 3 inches and that such a rule had been announced and promulgated by the United States Bureau of Public Roads. He testified also, that at the intersection in question an automobile traveling at the rate of 15 miles an hour, or 22 feet per second, would, in passing over the depression, have a maximum spring movement downward from normal of about 5 inches and a similar rebound, and hence it would drop by reason of the depression and spring movement combined approximately 15 inches, together with a rebound or return movement likewise of 15 inches. We fail to see any proper objection to the admission of this evidence. It was amply shown that the recommendation of the bureau of roads referred to by the witness was general in its terms and was subject to modification according to local conditions and the requirements as to drainage, etc., and these were matters of defense which the evidence shows were abundantly covered by defendant's own evidence. The testimony of the witness with relation to the drop of the automobile in passing over the gutter was an engineering problem about which he was especially qualified to testify, and the effect of the drop on a rear-seat passenger was a matter about which the jury might draw their own conclusion out of their common experience.

Nor do we think there was anything prejudicial, or, for that matter, improper, in the action of the court in allowing plaintiff to introduce a cross-section plat or map made by this engineer showing the depression at the intersection. The difference in the scale as applicable to the horizontal and vertical was fully explained to the jury, and we do not think they could have misunderstood it, and what we have just said applies equally to the objection that the witness should not have

been permitted to sketch the roadway on a blackboard. Witness was, as we have already seen, an engineer, and the sketch was intended to illustrate to the jury the meaning of the figures which he used. For such purpose we think it was entirely proper, and, as a matter of fact, we find nothing in the engineer evidence of defendant which challenges its substantial accuracy.

We pass, therefore, from this phase of the case to the exceptions founded upon the curtailment by the court of the cross-examination of some of plaintiff's witnesses by defendant's counsel. It suffices to say as to this that we have read the evidence carefully, and on the two or three occasions in which the cross-examination was somewhat limited we see nothing, nor is anything pointed out, which was in any sense prejudicial to defendant's case.

■ Exception was taken to the refusal of the court to allow the hospital records of the treatment received by plaintiff to be introduced in evidence and to the refusal to allow plaintiff's physician to be asked whether he had not forbade her receiving narcotics. We perceive no good reason for the refusal of the court to allow the records, when properly identified to be introduced in evidence in connection with the testimony of the physician under whose direction they were kept, but it is not to this that counsel objects but to the refusal to allow the doctor to answer the question whether he had forbidden narcotics, and this because of the testimony of plaintiff that her pain required her to take injections in the arm and "needles" in order to go to sleep, and that the doctor had so ordered. Obviously any testimony either party may have tending to contradict testimony given by the other party in relation to the subject-matter under consideration is admissible, and, if plaintiff had testified that the doctor prescribed narcotics to make her go to sleep, it was, of course, entirely proper that defendant have opportunity to show by the doctor that this was untrue, but we gather from reading the evidence of plaintiff that she was a woman of limited education and of foreign extraction, and, while it is true she spoke of injections in the arm, or of needles, she at no time said the injections were narcotics, though we think that inference natural under the circumstances. But in the doctor's previous testimony we observe that, speaking of her treatment, he said he had ordered certain types of drugs to be given her to combat and overcome her pain. He was not asked to speak more definitely as to the nature of the

drugs, but in view of this statement and the obvious possibility of misunderstanding on the patient's part, we do not feel the error, if it was error, was harmful.

■ Another exception grows out of the refusal of the court to allow defendant's witness, Herbert, to testify that Chessin, the driver of the car, had told him the day after the injury that he was driving the car approximately 18 miles an hour at the time he reached the intersection. As Chessin had already testified, and in his testimony had stated the rate of speed at which the car was being operated at 12 or between 12 and 15 miles, it would have been proper to contradict him by showing that he had previously made a contrary or different statement. But the rule in such cases is, of course, that the witness to be contradicted must be warned and given an opportunity to correct his testimony before the evidence of a different statement is admissible. In this case there was no such warning. However, Chessin was recalled to the stand later by the plaintiff, and, in view of counsel's statement that the information with relation to his previous statement had been obtained after Chessin had testified in chief, the effort then made to interrogate him as to whether such statement had been made was entirely proper, and it was error on the part of the court to restrict counsel in his endeavor to introduce the previous statement, but we think this error also was harmless. In an action against a municipality to recover damages for injury caused by a defect in a public highway, if the municipality expects to prove a lack of due care in the use of the street by the plaintiff, it must set up contributory negligence as a ground of defense, and until it does, the duty of the plaintiff, in order to make out a case of liability, is to show the defective condition and a knowledge of the same or opportunity for knowledge on the part of the municipality. In the case at bar there was no charge that plaintiff was negligent or that the car was driven at a dangerous speed, and, while it is doubtless true that, if this appeared in plaintiff's own evidence, it would have defeated recovery, nothing of the sort can be claimed, for there is no evidence in the record showing fault on the part of the plaintiff, nor was there anything in the excluded previous statement of the witness which would have that effect. So it is, if the statement of this witness that the car was being driven at the rate of 18 miles an hour had been admitted and the jury had believed it rather than the testimony given by the witness on the stand,

it would not have helped defendant's case, for all the evidence—that of defendant as well as that of plaintiff—shows that a speed of 18 miles an hour would have been lawful and permissible. Or, if the jury had refused to believe the witness entirely and disregarded all of his evidence, it would likewise not have shown any negligence on the part of plaintiff nor left her case without ample supporting evidence of defendant's negligence, for there was still in the case evidence, wholly unimpeached, on which the jury could very well find that the street in question was negligently maintained. On appeal, it is the court's duty to give judgment after an examination of the entire record before the court without regard to technical errors or defects which do not affect the substantial rights of the parties. 28 USCA § 391; Kanawha & M. R. Co. v. Kerse, 239 U. S. 576, 582, 36 S. Ct. 174, 60 L. Ed. 448; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 259, 42 S. Ct. 475, 66 L. Ed. 927. In this view, we have reached the conclusion that the error in rejecting this proffer of evidence will not justify a reversal.

During the trial of the case and while the plaintiff's physician was on the stand, her physical condition apparently made it necessary that she should retire from the courtroom. The trial court, observing that she was ill, inquired of the doctor if she needed his assistance, and upon his affirmative reply, excused him while he followed her into the retiring room. Counsel for the defendant objected that the incident was prejudicial and likely to excite the jury and that the trial should therefore be discontinued. If there were any fact on which to base a charge of fraud, or anything to show that the scene was concocted for the purpose of affecting the jury, the situation would be different, but this does not appear. As far as we are able to determine, plaintiff had been subject to fainting spells since the injury. She was in court because she was the person most interested in the trial, and the fact that she occasionally suffered fainting spells was no reason why her deposition must necessarily have been taken and the opportunity denied her to be personally present. While doubtless it is true that the event as it happened favorably influenced the faith of the jury in the truthfulness of plaintiff's story of her condition, in the absence of anything showing bad faith we think the court below was correct in proceeding with the trial, and our conclusion in this respect applies also to the objection by defendant to the continued presence in the courtroom of a human skull which had been used by the physician in explaining to the jury the character of the injury. While, of course, it is highly improper for counsel in such case to use a gruesome object in an effort to excite the sympathies or to inflame the passions of a jury, the refusal of the court in this instance to direct that the object, used through parts of the trial as in the case of a sketch or picture or photograph, should be bodily taken out of the courtroom, involves a matter of discretion which we cannot review.

The next assignment proper to notice is the objection to the testimony of the occupants of the houses located at either corner of the street intersection, of the disturbing effect on persons riding in an automobile while passing at a lawful speed over the depressed pavement or gutter. One of these testified he observed that automobiles passing that point at a speed allowed by law would bump and throw the occupants down into the car and shake them up generally. Another, that automobiles passing over the intersection at a greater rate of speed than 15 miles an hour would bump and throw the occupants off the seats. The objection to this evidence is that the circumstances as to which the witnesses testified must, in order to be admissible, be shown to be identical with the circumstances in the case in trial, but as both witnesses testified only as to the effect in the case of an automobile driven at a lawful rate of speed, we think that more detail is not required. In circumstances somewhat similar, the Supreme Court held such evidence admissible. District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618. That was a suit against a municipal corporation to recover for injuries received from a fall caused by a defective sidewalk, and it was held competent to show that while it was in that condition other like accidents had occurred at the same place. We think also that the evidence was admissible as tending to show notice, or opportunity for notice, to the city of the dangerous character of the location. See Capital Traction Co. v. Copland, 47 App. D. C. 157; Long v. John Brenner Co., 36 Cal. App. 639, 172 P. 1132; City of Lebanon v. Graves, 178 Ky. 758, 199 S. W. 1064, L. R. A. 1918B, 1016; Cordish v. Bloom, 138 Md. 92, 113 A. 578; Hebenheimer v. St. Louis, 269 Mo. 102, 189 S. W. 1180. In the last-named case, evidence was allowed showing that a coal hole cover prior to the time of injury would tilt when stepped upon.

But from what we have said in this respect, it does not follow that evidence of lack of injury occurring in the use of other streets in the neighborhood said to be similarly constructed was admissible. Evidence was admitted by the court below tending to show that the intersection in question was usable without danger to the occupants of automobiles when driven with reasonable speed. No objection was made to this, but the evidence offered of lack of accidents at other streets was properly rejected. Such evidence would tend to raise confusing collateral issues and would certainly not be helpful in disproving the dangerous character of the place in question. The issue here was the negligence of the defendant at the particular street corner at the time of the injury, and the nonoccurrence of accidents at other street corners, though the construction was more or less similar, would, we think, have brought into the case extraneous matters not properly submittable to the jury.

Error is claimed in the failure of the court to give the jury binding instructions, but as this point was not argued at the bar or on the brief, we need not stop to notice it except to say that the case was clearly one for the jury. Nor may we notice the assignment predicated on the refusal of the court to give certain instructions, as no exceptions were reserved to the failure of the court in this regard, nor objection made, or exception taken to any part of the charge as given.

This leaves only for consideration the assignment predicated on the charge of inflammatory language in the address of counsel for plaintiff to the jury. We have read the address as it is printed in the record and we are not disposed to think that the parts pointed out as tending to mislead or inflame the jury are properly subject to that criticism. It contained, it is true, the not unusual verbosity and rodomontade sometimes supposed to sway the feelings of a jury, but as we think it nowhere passed the limit of reply, inference, and criticism allowed to counsel in such circumstances, we are unable to characterize it as likely improperly to sway the jury. Nor do we think the verdict of the jury so excessive as to suggest this, or that they were misled or swayed by passion or prejudice. The injury was serious and many of its effects permanent. According to the evidence of the doctors, plaintiff sustained a fractured skull, and, since the accident, has been unable to do her ordinary housework or be left alone. If this testimony is true, and this was for the jury to say, the amount of the verdict is not out of proportion to the injury. The case in this aspect, as well as on the question of liability, was presented on evidence which was contradictory, and under our system it was for the jury to reject one and accept the other as they thought proper. That doubt of the honesty or truthfulness of plaintiff's witnesses may have occurred to us is not of itself enough to justify our substituting our view or opinion on that subject for that of the jury, nor is the fact that we might have reached a different conclusion on the whole case sufficient to authorize our setting aside the conclusion which the jury reached.

The other errors assigned and not noticed were either not supported by proper exceptions, or else are so without merit as not to justify comment. On the whole case as we see it, we are obliged to reach the conclusion that the judgment below should be, and it is, therefore, affirmed.

Affirmed.