## Monroe v. City of Louisville.

May 26, 1939.

W. J. GOODWIN for appellant.
GAVIN H. COCHRAN for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant, about fifty-five years of age, and in good health, was injured by falling into a hole in Erie Street, admittedly a city street. The accident occurred about 7:30 p. m. February 19, 1937. Later she instituted suit against the city; after alleging certain preliminary and essential facts she asserted that she was injured by falling in the hole in the city's street at the time stated and (by amendment) described that point as being on the north side of Erie Street, in front of the west side of

the residence of J. B. Scott, who lived at 416 Erie Street. She alleged that this particular part of the street was in a dangerous, defective condition, because there was a hole at this point about three feet wide "from north to south, and four feet from east to west, and about 5 inches deep."

She alleged that the dangerous condition of the street at this point was known, or could have been known to appellee by the exercise of ordinary prudence, and that such condition was unknown to her, and in the exercise of ordinary care, could not have been known. That under such circumstances, and at the time mentioned, while crossing the street from a neighbor's to her own home, she fell into the hole, and was injured to such an extent that she was compelled to lose considerable time; underwent pain and suffering, and to pay medical and other bills; for all of which she asked judgment for $10,240.

The city in answer denied the allegations of appellant's petition, and affirmatively plead that her injuries were the result of her own negligence. A reply to the affirmative matter in answer joined issue. The case proceeded to a point where, after the testimony of appellant, and three others in her behalf, the court, sua sponte, directed the jury to return a verdict for defendant. Judgment was accordingly entered; motion for a new trial overruled, and on appeal the sole question presented is whether or not the court below was in error in taking the case from the consideration of the jury.

Mrs. Monroe had lived at 413 Erie Street for twenty years, her residence, and other residences mentioned in the proof, being between Ashbottom Road and Park Boulevard, which we assume were the nearest intersections. Mrs. Scott, a neighbor, lived at 416 Erie Street, diagonally opposite from Mrs. Monroe's home, and as near as we can learn from the record, about 90 feet distant. The street as shown by a picture was about 20 feet wide, that is, the surfaced portion, with a grass plot on each side and a ditch (depth not shown) on Mrs. Monroe's side of the street. Lights, very indefinitely mentioned, were at the points of intersection above stated; what capacity they were is not shown.

Mrs. Gude lived next to Mrs. Scott, in the direction away from Mrs. Monroe's who lived on the north side of the street, the others named on the south side. The

hole in the street into which Mrs. Monroe fell was on the north side, and near the edge of the street, and almost, if not directly, opposite the Scott home. Prior to the time mentioned above, it appears that Mrs. Monroe's daughter, about sixteen or seventeen years of age, had gone over to visit Mrs. Gude, and later (7:15 or 7:30) Mrs. Monroe crossed the street to bring her daughter home. It does not clearly appear just where Mrs. Monroe crossed the street to the south side, but in returning she started in the general direction of her home at a point opposite the Scott home, and as she neared the north side of the bed of the street, fell into the hole. Mrs. Monroe does not undertake to describe the hole, its width or depth, nor does any one for her. The photograph in evidence showing the hole, is endorsed "greatest depression, 2½ inches."

That Mrs. Monroe was injured by her fall there is no doubt, but this question, or the severity of the injury (a double fracture of the ankle), or the intensity of the suffering, are immaterial, as the case turned. That Mrs. Monroe was familiar with the street, which, from the photographs and very indefinite testimony, was rough and uneven, and had been so for many years, is made clear from her evidence. It is not so clear that she was familiar with, or knew well the presence of this particular hole in the street. She had been passing up and down the street for the entire length of time she had lived there. She was a weekly visitor to an invalid neighbor, Mrs. Atwell, who lived on the south side of the Street at No. 410, nearer the opposite to Monroe's than was the Scott home, and in going there she would pass near the point where the hole was located. Mrs. Atwell, who had lived in her home about twenty years, had never seen the hole in the street.

Mrs. Monroe says it was dark at the time and she did not, and could not, see the hole. She very frankly admits that she had her mind entirely on the matter of getting her daughter home. She says that at the time of her accident she did not know the hole was there. At another point in her testimony Mrs. Monroe says: "I never seen the hole, and did not know it was there," and that she did not see it before the accident.

The daughter admitted that she knew the hole was at the point described, but when the accident happened she was still on the Scott's side of the street. It was at this point that the court requested counsel to come into

chambers, and indicated that he intended to give the peremptory, when counsel for plaintiff asked leave to introduce further proof, which request was granted. Counsel introduced Mrs. Atwell, whose testimony threw little light on the matter. He also introduced a city engineer, who testified that the portion of the street in controversy had been dedicated to and accepted by the city as early as 1918. After this testimony the following took place, as is shown by the record:

"Counsel for defendant declined to cross examine.

"By Mr. Goodwin: I want the record to show that the plaintiff does not suspend, but we are interrupted by the court's own motion."

Then without comment the court proceeded to instruct the jury to find for the defendant. This matter of interruption by the court is discussed in appellant's brief, and it is argued that the court erred in abruptly closing the case. This would present a different situation, if the record before us was in such condition as would require us to determine whether or not this was reversible error on the part of the court.

In appellee's brief it is argued that the court correctly ruled that Mrs. Monroe was as a matter of law guilty of such negligence as excused the city from liability. It was further argued that even if the court was in error on this point, his ruling was correct, because of the failure of the appellant to show that the city had ever undertaken the construction or repair of this part of the street, and a failure on appellant's part to show the size, depth or dimensions of the hole, or to show facts which might support an inference that the street at this particular point was in other than a reasonably safe condition. We may comment at this point that the court, in his opinion, seems to have discovered sufficient proof to lay the liability on the city, if he had not concluded that plaintiff was negligent.

Appellant's counsel replies, and says, in substance, that if he had not been "cut off," he would have introduced witnesses to prove the facts said by appellee to have been lacking.

"Since the city (evidently intended to read 'court') refused to permit appellant to introduce witnesses who knew about this, and who could have testified that the city had both constructed and re-

paired the street, it is obvious that this point cannot be considered. The record shows distinctly that appellant had such a witness, Mr. Charles Hopewell, who had worked for the city in repairing this particular street. Appellant also had other witnesses who would testify to the fact that the city had graded, and repeatedly repaired it. * * * Appellant had nine witnesses subpoenaed and ready to testify, and two additional for which appellant had forthwith subpoenas. The trial court stopped the trial and stated that he was going to give peremptory after appellant and only one witness had been heard.''

This later statement is true, as the record shows, but the court granted request for further testimony for appellant, and two witnesses were presented and heard, whereupon the court began giving his instruction. We cannot hold that the court committed reversible error in respect of this proceeding, chiefly because the matter is not properly presented. Counsel nowhere presented, offered to present, or insisted on presenting, the witnesses mentioned. It would have been a proper proceeding to have presented such witness as he had, and upon the court's refusal to allow the testimony, to have made avowals. Again, the action of the court was not complained of in the motion for a new trial, nor set up in the bill of exceptions, otherwise than is quoted above, as we view the record without objection or exception by the appellant.

Further, if these witnesses were to testify as to the working of the street by the city, it seems that this matter was well taken care of by the court. We need not discuss it further for reasons hereinafter appearing. Without quoting at length the conclusions of the court in directing a peremptory, we call attention to portions thereof. The court concluded as a matter of law that it was the duty of the city to exercise ordinary care to have and maintain its streets in reasonably safe repair for use by the public:

"If the city fails to do that and there is a defect, constituting an unsafe condition, and the city knows that, or could have discovered it, * * * and it is not known to some one who is injured by it, and not so open and obvious as that a person could not see or discover it, then the city is responsible.''

"This particular place in the street had in it holes or defects which you have seen in the pictures, and which I believe in one place is probably five inches in depth, or something like that. This might well be held to constitute an unreasonable construction, or a dangerous defect in the street. It was there long enough, whatever it was, for the City to have discovered it. Mrs. Monroe stated that she was familiar with that neighborhood, having lived there for twenty years. You heard her frank statement as to her goings and comings and passing that particular place and having seen the condition. She states that she did not know of the particular hole into which she says she fell and was injured, but she had known of the condition, the general condition for some years. * * * So, I don't think I could leave to you the question as to whether or not she knew or did not know of the condition, because it is evident that she did and was familiar with it for quite a length of time. A party using the city streets and sidewalks has a right to assume that they are in a reasonably safe condition, unless the defect or danger is so obvious that they must know of it. Mrs. Monroe says that she knew of the general condition of the surface of the street at that point. I cannot bring myself to submit that question as a disputed question. It is one of the primary points on which the liability of the city in this particular rests. * * * I am clear in my own mind that Mrs. Monroe had such knowledge of that condition as would prevent a recovery."

The only question determined by the court, as to Mrs. Monroe's negligence, was that she knew of the general condition of the surface of the street at this particular point. The court did not find as a matter of fact that Mrs. Monroe knew of this particular hole, which the court thought was about five inches deep. It may be that this was a question, in view of the testimony on this point, which might have been left to the jury's consideration. It may be that the lack of sufficient light, as testified to by Mrs. Monroe, would enter into the question of negligence on the part of the city, and the question of Mrs. Monroe's alleged contributory negligence. The evidence on this point was meager, and we are not called upon to decide this matter one way or the other. The sharp question presented here is whether or

not at the time Mrs. Monroe fell into the hole she was using ordinary care for her safety.

On this question we have a case so directly in point that a reference to it demonstrates that the court, under all the related facts, should have passed this case to the jury for its consideration. That case is Krieger v. Louisville Water Company, 272 Ky. 746, 115 S. W. (2d) 286, 287. In this case, "Appellant was the only witness who stated how her injury occurred. * * * After the evidence offered by her was heard, upon motion of appellee, the court directed the jury to return a verdict for appellee, which was done."

In the case supra, the facts are clearly stated, and we shall not restate them.

It is true that the court in the above case quoted what was said in the case of Prather v. City of Louisville, 243 Ky. 753, 49 S. W. (2d) 1001, 1002, and which was not necessary in reaching the conclusion that appellant was not guilty of contributory negligence in catching the heel of her shoe in an opening to a drain pipe four inches in diameter. The language used is as follows:

"There may be obstructions or holes in the street of such size that a pedestrian who knows of their presence, and was injured by them, will be guilty of contributory negligence as a matter of law, but the condition of the sidewalk in question is not of that kind."

When we turn to the Prather case, supra, we find that the quoted language appears to be dictum, although it is perhaps a true statement of the law in some cases under all the facts and circumstances appearing. It was likewise dictum in the Krieger case.

The court in the Krieger case, supra, in concluding that "It is usually a question for the jury, in case of an accident, whether or not the person using the street was, at the time, proceeding with proper care for his own safety," cited City of Providence v. Hunter, 231 Ky. 72, 21 S. W. (2d) 135; City of Paintsville v. Spears, 242 Ky. 762, 47 S. W. (2d) 727, and quotes from City of Louisville v. Brewer's Adm'r, 72 S. W. 9, 24 Ky. Law Rep. 1671, which in turn quotes from City of Maysville v. Guilfoyle, 110 Ky. 670, 62 S. W. 493, 23 Ky. Law Rep. 43, a case very much in point on the sole question here presented.

To these there may be added, City of Ludlow v. Stetson, 163 Ky. 327, 173 S. W. 806; City of Madisonville v. Pemberton's Adm'r, 75 S. W. 229, 25 Ky. Law Rep. 347, City of Lebanon v. Graves, 178 Ky. 749, 199 S. W. 1064, L. R. A. 1918B, 1016. In City of Cynthiana v. Sersion, 261 Ky. 667, 88 S. W. (2d) 672, the question discussed was rather the reverse of the one presented here. The sole question there was as to whether or not the hole in the sidewalk was of sufficient size, or in such condition as to constitute negligence on the part of the city. Quoting from City of Louisville v. Haugh, 157 Ky. 643, 163 S. W. (2d) 1101, 1102, we said:

" 'The distinction between a hole in the stieet which would render a street unsafe and a hole that would not do so is a thing practically impossible to define. The depth of the hole alone would not control such characterization. Its shape, its size, its location with reference to the street lighting, its location with reference to the conditions and extent of public travel, and many other considerations would enter into the determination of the question of the effect of such hole upon the safety of the street, and would make the inquiry as to whether such hole amounted to a want of ordinary care upon the part of the city peculiarly a question for the jury.'

"It seems to us the condition described in this record, which it is admitted caused the plaintiff to fall, was such that reasonable men might well differ as to whether or not it was such a defect as rendered the pavement unsafe, and dangerous, and as to cause persons exercising ordinary care for their own safety to be injured."

What is said above may be applied with equal force in considering the question here discussed, that is, whether or not Mrs. Monroe at the time of the accident was using such care as an ordinarily prudent person would exercise under like circumstances.

We are of the opinion that the court should have submitted the cause to the jury.

Judgment reversed.

The whole court sitting, Judge Stites dissenting.

Judge Stites (dissenting).

It seems to me that there is a quite obvious distinc-

tion between this case and the case of Krieger v. Louisville Water Company, 272 Ky. 746, 115 S. W. (2d) 286, which it undertakes to follow. In the Krieger case the plaintiff fell over a water box in an otherwise smooth sidewalk. In the case at bar the entire surface of the street "was rough and uneven, and had been so for many years." It strikes me that one who walks over such a street, with knowledge of its condition, must exercise some care for his own safety. The appellant certainly did not do so. The court did not err in saying as a matter of law, that appellant was negligent. I think that the judgment should be affirmed.