## Majestic Theater Company v. Lutz.

### (Decided June 19, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Theatres and Shows—Whether Steps of Theatre Were Unsafe, Held Question for Jury.—In action for injuries resulting from slipping on marble steps of theatre, whether steps were polished, glazed, and slippery, and therefore dangerous to persons descending, or whether they were rough-finished marble, held for jury, where evidence was sharply conflicting.

2. Negligence—Duty to Invitee Stated.—Invitee receiving gratuitous favor like licensee, must take premises as he finds them, but person expressly or impliedly inviting others to come on his premises for business owes them duty of exercising ordinary care to render premises reasonably safe.

3. Theatres and Shows—Theatre Patron Held Invitee, Entitled to Have Premises in Reasonably Safe Condition.—Theatre patron who pays to see performance is invitee, and owner of theatre must exercise reasonable care to have premises, including stairway on which patrons pass, in reasonably safe condition, and if he fails to do so is liable to one injured through his negligence in failing to perform his duty.

4. Theatres and Shows—Theatre Owner Liable for Injuries from Maintaining Steps in "Inherently Dangerous" Condition—"Inhere."—Though marble steps are not inherently dangerous, they may be made so, and theatre owner is liable for injuries resulting from maintaining steps in such glazed and slippery condition as to make them "inherently dangerous" even if otherwise constructed in approved manner; "inherently dangerous" meaning that in the end inheres danger; "inhere" meaning existing in and inseparable from something else, sticking fast.

5. Theatres and Shows—Person Injured Not Entitled to Recover, Unless Place was Unsafe.—If structure or improvement made by city or individual operating place, such as theatre, be built according to recognized principles and of proper material, one who falls and injures himself thereon is not entitled to damages, unless improvement, when made according to plans, was unsafe and dangerous for use for which it was maintained.

6. Trial—Instructions Requested by Defendant Theatre Owner Held Properly Refused, in View of Instructions Given.—Where instructions given in action for injuries from slipping on marble stairs of theatre covered owner's duty to keep steps in safe condition for patrons, contributory negligence, and measure of damages, and defined "ordinary and reasonable care," held that court properly refused defendant's instructions as to contributory negligence, assumed risk, and that, if steps were defective and plaintiff had notice thereof, to find for defendant.

7. Damages—Evidence Held to Warrant Instruction to Find for Patron Who Fell on Theatre Steps on Account of Diminution of Earning Power.—In action for injuries from slipping on stairs of theatre, evidence held to warrant instruction to find for plaintiff on account of diminution of her earning power.

8. Appeal and Error—Question Raised by Appellant's Objection, Sustained by Trial Court, Held Not Reversible on Appeal.—Question raised by appellant's objection which was sustained by trial court held not reviewable on appeal.

9. Appeal and Error—Argument of Plaintiff's Counsel in Personal Injury Action Held Not Prejudicial.—In action for personal injuries, statements by plaintiff's counsel in argument that he did not know and did not care why defendant was spending money to take down his argument and to bring witnesses and experts to testify held not prejudicial.

10. Appeal and Error—Trial—Trial Court Has Reasonable Discretion in Ruling on Motions for View of Premises by Jury, and, Unless it Violates this Discretion, its Ruling Will Not be Disturbed.—Trial court has reasonable discretion in ruling on motions for view of premises by jury, and, unless it violates this discretion, its ruling will not be disturbed.

11. Damages—Award of $3,850.00 for Permanent Injuries to Woman Held Not Excessive.—Where as result of fall a young saleslady seriously injured her knee and certain female organs, necessitating major operation involving removal of certain genital organs, an award of $3,850.00 held not excessive.

TRABUE, DOOLAN, HELM & HELM, and HARRIS W. COLEMAN for appellant.

FRANK DACHER and JOHN O. ARNOLD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

As she was leaving the Rialto Theater, which is operated by the appellant, Majestic Theater Company, in Louisville, appellee, Helen Josephine Lutz, a young woman, slipped and fell on the marble steps leading from the promenade to the first floor, striking and injuring her side, hip and knee, for which injuries she instituted this

action against the theater company to recover damages on the ground that the marble steps were in a highly polished, glazed, slick and slippery condition, which rendered them dangerous, and which slippery condition was the proximate cause of her fall and injury. The company traversed the material averments of the petition and pleaded that the contributory negligence of Miss Lutz brought about her injury. By reply Miss Lutz traversed the plea of contributory negligence. Later she filed an amended petition averring that the staircase upon which she slipped and fell and was injured was more than eight (8) feet in width and that by the building code of the city of Louisville in force at the time of the erection of the Rialto Theater and at the time of the accident and injury to plaintiff, required staircases, such as the one in question, eight (8) feet or more wide, to be provided with a center handrail of metal, not less than two inches in diameter placed at the height of about three feet on the center of the tread and supported on wrought metal or brass standards of sufficient strength, not nearer than four (4) feet and no more than six feet apart, securely bolted to the tread of the stairs, and at the head of each flight of stairs on each landing the post or standard to be at least six feet in height, to which the railing should be securely attached; that the staircase in question was not so provided with such handrail running up the center; that such construction was in violation of the building code of the city, and that the failure to have a center handrail directly contributed to her fall and injury; that the company in the maintenance and construction of its theater was negligent in failing to provide a center handrail on the stairs described in the petition, "and negligently and carelessly ran and operated said theater and steps without providing said staircase with any center handrail whatever, and the failure of defendant, its agents and servants and employes to provide such, or any, handrail helped and caused to bring about the injuries set out in the plaintiff's petition."

These averments were traversed. A trial by jury resulted in a verdict for $3,850.00. From judgment entered upon that verdict this appeal is prosecuted. Appellant company insists that the judgment should be reversed (1) because (a) there is no evidence of negligence on appellant's part; (b) because of contributory negligence on appellee's part; (c) because it was not proven

that appellant had notice of the defect claimed to exist by appellee; (2) because the court erred in instructing on the diminution of earning power, when there was no evidence to support this instruction; (3) because the court refused an instruction on the question of notice, if there were any evidence of notice to the appellant, of defective condition to the steps; (4) because the court admitted the incompetent evidence relating to mats and handrails (a) because it was not shown that these were required by law or good building practice; (b) because appellee had alleged specific acts of negligence, and there was no allegation that appellant was negligent in not furnishing mats; (5) because the court excluded competent evidence offered in the testimony of Dr. Stuart Graves; (6) because the verdict is excessive, either induced by incompetent opinion evidence given by Dr. Casper, or by the prejudicial remarks made to the jury by appellee's counsel, and (7) that the jury should have been allowed to see the premises.

Its chief insistence, however, is, that the trial court should have sustained its motion for a directed verdict in its favor, and this question has given us great concern. It says in its brief that marble steps are not inherently dangerous and a person who slips and falls thereon has no cause of action against the owner unless there is a defect in the construction. In support of this proposition it cites the case of Tudor v. City of Louisville, 172 Ky. 429; also City of Louisville v. Uebelhor, 142 Ky. 151; Carroll's Admr. v. City of Louisville, 117 Ky. 758; McCourt v. City of Covington, 143 Ky. 484; Breckman v. City of Covington, 143 Ky. 444.

On the other hand, appellee, Lutz, insists that as she was an invitee, paying an admission fee to witness an amusement program in the theater, the company operating the place owed her the duty to use ordinary care to keep its premises, including its marble steps leading in and from its theater, in a safe condition, and its failure to perform this duty and the resulting injury of appellee rendered it liable in damages. Miss Lutz and a young woman companion went to the theater on Sunday night. The crowd was large. When it was found they could not obtain seats on the first floor an usher, employed by the theater company, instructed them to go up the steps to the promenade, which they did; the second floor was as

crowded as the first, and the usher in charge there, realizing the situation, instructed the young ladies to return to the first floor. After viewing the situation they decided to accept his advice and started to go back down the steps by which they came up, but the usher forbade them to do so and directed them to go down another flight of steps of the same general character which were intended for exit purposes only. When they went to the head of the stairs, which consisted of only about eight steps of marble about eight feet or more wide, they found that a number of people were coming up and that the only open way was down the center of the steps, both sides being occupied. They hesitated a moment but the crowd continued to come; thereupon they started to descend. As appellee Lutz stepped upon the second tread from the top she slipped and fell, sustaining injuries of which we will speak later. After testifying that she and her companion, Miss Woods, went into the Rialto Theater and bought tickets and that they were unable to find seats on account of the large crowd, she stated that they were standing near the rear, "and the usher told us we couldn't stand there any longer, but we had to go upstairs. We went upstairs the back steps and when we got up there it was crowded and people standing up there, and the usher told us we had better go down stairs because we could not see. We tried to go back down the back steps as we came up and the usher there told us, no, we couldn't do that, we had to come down the front steps."

In answer to the question as to whether she went to the front steps of the promenade in pursuance to instructions from the usher, she said:

"A. Yes, sir; went to the front steps and when we got there we stopped for a few minutes because there was an awful crowd coming up and down. I stepped down on the second step; both of my feet slipped from under me, because they were very slippery and highly polished, and I fell all the way down on my left side and tried to stop myself. I hit my knee and landed on the landing and some gentlemen coming up the steps picked me up and helped me down. All the way down the steps, and my girl friend took me in the rest room and then I stayed there until I was able to stand up."

In answer to the question as to what caused her to fall on the steps, she said:

"A.   Highly polished marble.

107.   How do you know that that caused it? A. I know that is what caused me to fall.

108.   Do you know that that is what caused you to fall or hurt you, just— A. I know that is what caused me to fall.

109.   How do you know? A. Because they looked very glossy, and when I slipped on them they were very, very slippery and polished, very glazed— glazed, looked like they were polished very highly.

110.   How do you know, when did you see them before that day? A. Before I stepped on them.

111.   You saw that they were very highly polished and glazed when you stepped down there on them? A. Yes, sir.

112.   And that is what caused your fall, is that slippery condition? A. Yes, sir.

113.   There was no other substance there that you saw? A. No, sir.

114.   Nothing else entered into it? A. No, sir.   . . .

122.   And that it was the 5th? A. Yes, sir.

123.   Don't you realize that when steps are highly polished and in a glazed condition you are liable to fall? A. No, sir.

124.   You didn't realize that? A. No, sir.

125.   You looked down on the steps as you started down? A. Yes, sir.

126.   You saw they were slippery, smooth, in a glazed condition? A. Yes, sir.

127.   And went on down? A. Yes, sir.

128.   Other people were coming up by the side of the rail, both sides? A. Yes, sir.

129.   You were not afraid that you would fall? A. No, sir.

130.   Why weren't you afraid? A. Well, I was very cautious about going down.

131.   Well, if you were very cautious about going down, why didn't you wait until those other people got through coming up by that rail, and come down by the rail? A. Because I did not want to wait there very long for other people to come up and

down; they were coming up and down all the time; I couldn't wait that long.

132. You at any rate came down in the center of them? A. Yes, sir.

133. Seeing that they were slick, smooth and polished? A. Yes, sir.

134. And took your chance? A. Yes, sir."

In all this testimony she was supported by her young woman companion.

The theater company called several witnesses, including architects, builders and building inspectors, to prove that the steps on which Miss Lutz fell were properly constructed and maintained, and these experts testified that there was nothing dangerous in or about the construction of the steps; that the steps had been approved by the building inspector of the city and were also approved by good building practices; that similar steps were used in the Louisville Home Telephone building, the city hall and other expensive buildings, such as the State Capitol at Frankfort, which has wide marble steps leading from practically every floor.

On these facts the theater company insists that the company is not liable to Miss Lutz for injuries received by her in her fall because, as they say, all authorities, both from this court and courts of sister states, hold that steps or floors which are merely slippery or smooth do not render the maintainer guilty of negligence and liable for consequential injuries.

After considering the authorities cited the court has reached the conclusion that appellee, Miss Lutz, was entitled to have her case submitted to the jury. There was great conflict in the evidence. For Miss Lutz it was testified that the steps were polished, glazed, slick and slippery and, therefore, very dangerous to persons trying to descend them; while for the theater company it was testified that the steps were of rough finish American marble. The question was one, therefore, about which reasonable men might differ, and was a question for the jury. Sydnor v. Arnold, 122 Ky. 557; L. & N. R. R. Co. v. Howard, 82 Ky. 212; L. & N. v. Joshlin, 110 S. W. (Ky.) 382. In the case of L. & N. v. Spear's Admr., 192 Ky. 64, we said:

"It is well settled that wherever there is any doubt as to the facts it is in the province of the jury

to determine the question, or where there may be a reasonable difference of opinion in the case, as to inferences and conclusions to be drawn from the facts, it is likewise a question for the jury.'' City of Lebanon v. Graves, 178 Ky. 749; City of Newport v. Schmit, 191 Ky. 585.

In the case of Tudor v. City of Louisville, *supra,* where a question of slipperiness of a pavement was involved, it was said:

"We would not be understood as holding that a city would not be liable under any circumstances because of smoothness or slipperiness of a sidewalk, either as originally constructed or becoming such by use, resulting in it becoming dangerous or unsafe for travelers.''

Supporting this we said in City of Newport v. Schmit, *supra*:

"It may be confessed that, if there were no contradictions in the evidence upon that subject, and all of the evidence conduced to prove the conclusions drawn from it by counsel for defendants, but when the evidence as to the character of the tiled portion of the sidewalk, with regard to its condition of safety for travel, is examined, it is apparent that the evidence upon that subject is very contradictory and made necessary a submission to the jury of that issue, and the fact that we would arrive from the evidence at a conclusion different from that at which the jury arrived, is aside from the subject, nor will a conclusion upon our part, if we had been the triers upon the facts, that the verdict should have been upon the issue for the defendants, warrant a conclusion that the issue ought not to have been submitted.

. . .

"Under this state of evidence, the issue as to the reasonable safety of the sidewalk, at that point, for travel by pedestrians, was an issue for the jury, and which the court could not take away from it, as the defendants insisted that it should, without entirely ignoring a very considerable portion, and probably a preponderating portion of the evidence. City of Lebanon v. Graves, 178 Ky. 749; City of Dayton v. Lory, *supra.*''

Clearly we think Miss Lutz was an invitee within the full legal meaning of that term as distinguished from a licensee. "Where there is some benefit to the invitor his duty to exercise care to have his premises safe is increased. If, however, there is no benefit to the invitor but the invitee alone is benefited, or the invitation is for his pleasure or amusement, the rule is much the same as that governing licensees. A guest who is receiving a gratuitous favor has no such relation to the invitor as to create the duty to make the place where hospitality is tendered safe, or better than it is. But like the licensee he must take the premises in the condition he finds them. To one who expressly or by implication invites others to come upon his premises for business, owes to them the duty of being reasonably sure he is not inviting them into danger and must exercise ordinary care and prudence to render the premises reasonably safe." Leonard v. Enterprise Realty Company, 187 Ky. 578. A patron of a theater who pays to see the performance is an invitee, and the owner of the theater must exercise reasonable care to have his premises, including the stairway over which his patrons pass, in a reasonably safe condition for their use, and if he fails to do so he is liable in damages to one injured through his negligence to perform this duty.

With these principles in mind let us examine the facts. The marble steps on which appellee Lutz fell and injured herself are said by appellant not to have been inherently dangerous; that the steps were regularly and properly constructed, smooth of surface and upon a grade which experienced builders regard as safe and which was commonly employed in stairways in public buildings of this character. The expression "inherently dangerous" means that in the end there inheres dangers. The word "inhere" is defined to mean existing in and inseparable from something else; sticking fast.

If the steps upon which Miss Lutz was injured were inherently dangerous, all will admit she was entitled to have her case submitted to the jury. They were inherently dangerous if in the steps there inhered danger, or, in, or to or of the steps there was danger to one using them in the ordinary way, exercising reasonable care for his own safety. No doubt appellants would agree at once that if the steps had been so rough on the surface as to cause the shoe of a patron of the theater to stick or hang

and thus cause him to fall that the theater company would be liable for the injury. It seems quite inevitable. If that be so, why would not the owner of the theater be equally liable if he maintained the marble steps of his stairway in so slick, glazed and slippery condition as to make them dangerous? A step may be just as inherently dangerous from being slick as from being rough, sticking or slippery. Of course it does not so frequently happen, but it may nevertheless happen, as one may see by the application of reason and common sense. If, indeed, the steps on which appellee, Lutz, fell were so slick and slippery as to render them inherently dangerous, even though they were otherwise constructed upon a plan and in a manner generally accepted by experienced and competent builders as reasonably safe, they nevertheless render the owner liable in damages to an invitee who falls and injures himself while so using them. Marble steps are not necessarily dangerous but they may be so, or they may become so from use. Appellant seems to recognize this fact because it proved by its expert witness that the marble in question was not slick and glazed but was ordinary American marble, with a coarse surface commonly called "hone finish." Certainly one might polish marble steps in such way as to make them very slick and dangerous, and if he should do so purposely, or, if he should suffer steps in his theater to which he invites the public to come, for pay, to become slick and glazed from constant use, and a patron should fall and injure himself as the result of the slickness of the marble steps, the owner would be liable. This principle is recognized in all of the Kentucky cases. While we have no case exactly on all fours with the case at bar, we have many presenting analogous features and from which we may readily conclude that the foregoing principles should be applied to the facts of this case. If a structure or improvement made by a city or by an individual operating a public place, such as a theater, be according to recognized principles, and of proper material, one who falls and injures himself thereon will not be entitled to recover damages unless the improvement when made according to the plans was unsafe and dangerous for the use for which it was intended. City of Lebanon v. Graves, *supra*. In that case we said:

"It would appear, therefore, that it makes little, if any, substantial difference so far as the liability

of the city is concerned whether the unsafe and dangerous condition of the street was due to a defective plan, or due to conditions that the city permitted to come up after the construction of the street pursuant to a plan that contemplated a street reasonably safe for public travel; and that when a city undertakes to construct or reconstruct a street or pavement, it is under a duty to so construct and maintain it as that it will be reasonably safe for public travel; and this duty is a continuing one, and no plan will justify the construction of a pavement so slick and slippery as to be unsafe and dangerous. . . .

"We may also here add that the fault in this pavement was not so much in the grade as it was in the slippery surface of the pavement, which could have easily been remedied and which it was negligence to permit to remain."

To like effect is the opinion of the case of City of Newport v. Schmit, 191 Ky. 585.

The question of the negligent maintenance of the steps was submitted to the jury by the following instruction:

"1. It was the duty of the defendant, Majestic Theater Company, as owner and operator of the Rialto Theater, to exercise ordinary care to keep the steps leading up from the first floor thereof to the balcony or promenade in a reasonably safe condition for the use of the public attending said theatre, including the plaintiff.

"And if the jury believe from the evidence that the defendant failed to use ordinary care to keep said steps in such reasonably safe condition, and such failure on its part (if any there was) was the direct and sole cause of the plaintiff's falling, and the plaintiff was thereby injured at the time and place referred to in the evidence (if she did so fall and was thereby injured), then the law is for the plaintiff and the jury should so find.

"But unless they so believe, then the law is for the defendant and the jury should so find."

Following this the court gave an instruction presenting the law of contributory negligence applicable to this case, another on the measure of damages, and yet another defining "ordinary and reasonable care."

Appellant offered an instruction on contributory negligence, assumed risk, and another, in substance, that if the jury believed that the steps were defective and appellee had notice of the defect, to find for it. All these were rejected by the court, and we think properly so in view of those given.

Answering appellant's contention that the court erred in instructing the jury to find for appellee on account of diminution in earning power based upon its contention that there was no evidence on this point and no competent evidence showing permanent injury, we think it sufficient to call attention to the fact that appellee proved she was a saleslady, required to stand and be much on her feet, and that she was not able, since her injury and on account thereof, to move about as readily and easily as before, and, therefore, of less service to her employer, in full justification of the instruction upon this phase of the case, and for the rejection of this ground of reversal as not well taken. Borderland Coal Company v. Edwards, 189 Ky. 288.

Objection of appellant to the introduction by appellee of the city ordinance upon the question of the handrail on the stairway having been sustained by the trial judge, this question is not now before us.

The next ground of complaint is that counsel for appellee indulged in improper argument before the jury in saying:

"I notice they are taking down what I say. I don't know what it is for. I don't know what they are spending money for that for. You can bring witnesses from Youngstown, Ohio; you can spend money to take what I say; you can spend money getting the doctors, the experts, from all over town, if you want to."

While this was perhaps a breach of professional etiquette on the part of counsel making the argument, we fail to find in it anything prejudicial to the interest of appellant company. Some of the facts referred to were taking place in the presence and sight of the jury, others had appeared in evidence during the trial.

The trial court is allowed a reasonable discretion in ruling upon motions for view of premises by jury, and unless it violates this discretion its ruling will not be disturbed. Hall v. Com., 189 Ky. 72; Saulberry v. Wellman

Electrical Co., 173 Ky. 462; Husband v. Paducah & Illinois R. R. Co., 186 Ky. 294.

Appellant asserts the verdict of $3,850.00 is excessive. It appears to be liberal, but if the evidence of appellee, Lutz, and her physician be accepted, showing a serious injury to her knee and to certain female organs, necessitating a submission by her to a major surgical operation involving the removal of certain genital organs from her body, a different conclusion may be reached. All this evidence was heard and considered by the jury. This court cannot, in the face of the evidence of appellee and her physician showing the seriousness and permanency of her injuries, say the verdict is excessive, for it is not if credence be given to that testimony.

Other grounds relied upon by appellant are without merit, as it appears to us.

Judgment affirmed.