## Kroger Grocery & Baking Company v. Monroe.

(Decided January 20, 1931.)

O'NEAL & O'NEAL for appellant.

WOODWARD, HAMILTON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an action for damages for personal injury. For her cause of action, appellee alleges that appellant owned and operated a store on the Bardstown road near Tyler Parkway in Louisville; that on December 24, 1928, she went to this store to purchase some cream; that appellant, at that time, negligently and carelessly maintained the floor of the storeroom, and so negligently and carelessly allowed same to be oiled, as to make it dangerous and unsafe; that this dangerous and unsafe condition was known to appellant, or might have been known to it by the exercise of ordinary care on its part; that such dangerous and unsafe condition was not known to her, and could not have been discovered by her by the exercise of ordinary care; and that while trading in the store and at a place set apart by appellant for the use of appellee and its other customers, and while she was exercising ordinary care for her own safety, she was caused to slip and fall by reason of the unsafe condition of the

floor, and that she thereby received certain personal injuries.

Subsequently, she filed an amended petition setting out more in detail her injuries, and increasing the amount of her damages to $20,000. The appellant traversed the allegation of the petition, and, in the second paragraph, it pleaded contributory negligence. In the third paragraph thereof it alleged that the condition of the floor was known to and easily seen and discovered by appellee when she walked in the front door of the store, and that, with this knowledge of the condition of the floor, continued into the place and thereby assumed the risk of the injury complained of. This answer was traversed by a reply. Thus the issues were made up.

On the trial, appellee testified, in substance, that she resided between a block and a half and two blocks from the store; that she had been trading at this store for two or three years; that she did a great deal of trading there, on an average of five or six days a week; that on the afternoon of December 24, 1928, for the purpose of making a purchase of cream, she entered it. On entering, she observed an unusual amount of oil on the floor near the door; that her eyes fell on it as she entered the store. On entering the turnstile, she turned to the left, walking very "slowly and very carefully," as slowly as she could to be walking along; that she was extra careful and walked past the first and second row of shelves, going to the ice box where the cream was kept; that she did not stop to purchase, look at, or observe anything for sale. As she turned to her left going toward the ice box her foot slipped on the oiled floor, she fell, and in falling she was hurled headlong against an upright piece of oak which held the third portion of the shelves; from this fall she was knocked senseless; that she remembered fainting five different times; that when she first became conscious she was supporting herself with her left arm; that she was unable to say anything to anybody in the store; that Dr. Ellis Duncan took her to the Baptist Hospital where he sewed up her scalp, made an X-ray, and gave her the lockjaw serum; she remained at the hospital until the next afternoon when she was brought home; she was confined to her bed for three or four weeks, sitting up only an hour or so each day. Her right leg and right hip were injured;

that she suffered excruciating pain in her left side and was unable to sleep at night; that there was a cut on her head on the right side; a portion of her scalp, as large as a hand, was torn loose, and for several months she was practically paralyzed.

Her son testified in her behalf that, on arriving at the store within a very short time after the accident, he observed the condition of the floor; that it had been partially oiled; that it was very easy to see that it had been oiled; that there was oil on the floor; that the floor was slick; that he examined the floor where his mother had fallen; that he could see where her foot had slipped on the floor; the mark was ten inches or a foot in length. The daughter states that, within fifteen or twenty minutes after she received information of her mother's injury, she arrived at the store of appellant; that she observed the condition of the floor as she entered the store; the floor was freshly oiled and was light in color where the oil had begun to soak in, and dark where it had not; that the floor was slick.

Two customers and two employees of appellant testified in its behalf that they were present at the store at the time appellee fell and received her alleged injury. One of these customers testified that she went into the store "right behind" appellee, followed her around to near the end of the third aisle; that she was "right behind" her when she fell, and when asked if there was any oil on the floor responded, "I never seen it;" that, after falling, appellee exclaimed, "My ankle gave way with me and I fell;" that she picked up appellee's pocketbook and handed it to the clerk; that the floor was not slick; that she went across it, and she did not fall.

The other customer testified that she was at the store at the time the accident happened; that she went all through the store; that the floor seemed to her to be as it always, extremely clean; that there was no oil on it at all; that she did not see appellee fall as she was using the telephone at the time; that on learning that she had fallen, and being acquainted with her, she went to her and offered her assistance. In her presence, appellee stated her ankle must have turned and caused her to fall.

The employees of appellant testify that they were in the store; that they heard appellee say her ankle turned under her; that there was no oil on the floor. The process of oiling the floor, next before the happening of

the accident, was described by one of the employees. He stated that the oil was poured on the floor and rubbed in with a mop. In the morning following the application of the oil, if any oil remained on the floor, it was mopped up. It was generally oiled on Saturday night, and, on Monday morning, if there was oil on the floor, it would be mopped up with a sack or something until wiped dry. He says that there was not a drop of oil on the floor at the time appellee fell and received her injuries; that appellee made no statement at the time she fell as to what caused her to fall, except her ankle turned under her.

On a jury trial, a verdict was returned against appellant and judgment rendered thereon for the sum of $1,500, from which this appeal is now prosecuted.

It is urged, as grounds for reversal: (1) Error of the court in refusing to direct a verdict in favor of appellant; (2) error of the court in refusing to give instructions offered by appellant and in the giving of those given by the court to the jury.

The first ground for reversal is predicated upon the testimony of appellee that she knew the oil was on the floor, and that with this actual knowledge upon her part she walked on it until she fell and received her injury. There is no conflict of evidence as to her actual knowledge of the presence of oil on the floor. It is urged that she both so contributed to and assumed the risk by walking thereon as to preclude her recovery, and that her admission of her actual knowledge of the oil on the floor entitled appellant to a peremptory instruction at the conclusion of the evidence. It is insisted that, if this contention is not correct, there should have been given to the jury the instruction offered by appellant, and which is, in part, in this language: "If you believe from the evidence that the floor of the said store-room was not in a reasonably safe condition for the use of its customers, including plaintiff, and the defendant knew thereof, or could have known thereof by the exercise of ordinary care, and the plaintiff did not know thereof, then the law is for the plaintiff and you should so find. . . ."

The appellant, in support of its argument, urging that a peremptory instruction, as well as the instruction above, should have been given to the jury, relies upon the cases of Noonan et al. v. Sheridan, 230 Ky. 162, 18 S. W. (2d) 976; Bridgford v. Stewart Dry Goods Co., 191 Ky. 557, 231 S. W. 22.

In the case of Noonan v. Sheridan, the facts were that a linoleum was standing upon its end near the front doors, and between them and one of the show windows. Thus standing it was a cylinder some six feet in height. Mrs. Noonan, her clerks, a daughter, and a number of customers were in the store. They were busy waiting on the customers. Three little boys, ranging in ages from seven to nine years, came into the store to purchase some gingham and started to playing about the store. Suddenly the roll of linoleum toppled over, striking plaintiff on the head and knocking her to her knees, thereby injuring her quite severely. The testimony on behalf of plaintiff offered no explanation of the falling of the linoleum. One witness for defendant stated that she saw one of the little boys, while they were playing, knock the linoleum over, and that these boys caused it to fall. There was no evidence that it would have toppled over, except for the push which these boys gave it. The trial court refused a peremptory instruction, and, on appeal, we directed that a peremptory be given.

In the Bridgeford case, about 3 o'clock in the afternoon on the day of the injury to plaintiff, she went to the checkroom for her grip. In walking back to the stairway her foot slipped, caused her to fall and receive serious injuries. Just a few minutes before her fall, the basement had been covered with water as the result of an unusual rainfall. The presence of the water on the floor was not there by the act of, or caused by, any negligence upon the part of defendant. Immediately upon the flooding of the floor by the rain and before the plaintiff entered on it, the janitors were put to work, and, at the time she entered, were at work mopping up the floor where it was wet. The plaintiff in her testimony stated there was ''just a little dampness on the floor where they had finished mopping,'' evidently it was water from the condition of her clothes; that she noticed this dampness as she walked toward the counter for her grip.

Our conclusion in that case is in this language: ''Certain it is that the mere fact the floor was moist or damp did not render it so dangerous as to require of defendant, in the exercise of ordinary care for the safety of its customers, that it should place barricades across the entrance to the basement and prevent its use altogether until the floor was entirely dried out. . . . We are quite sure that one who used such a floor (that is a

floor suddenly wet by rainfall) with full knowledge of its condition assumes any and all risks incident to its use.''

The rule which we announced in these two cases and so earnestly relied upon by appellant in the present case was the law of those cases. A mere statement of the facts of those two cases distinguishes them from the present one.

Appellant had a right to oil the floor of its store. It was not an insurer of appellee's safety while she was using it. But, it was its duty, after oiling it, to use ordinary care, that is, that degree of care usually exercised by an ordinarily prudent person engaged in the same line of business, to maintain its floor in a reasonably safe condition for the use of its customers while using it when making their purchases of its goods. It was likewise the duty of appellee to exercise ordinary care, that is, that degree of care usually exercised by ordinarily prudent persons under circumstances like or similar to those under which she was at the time using the floor while making her purchase, for her own safety. The observing by her of the presence of oil on the floor and walking thereon, as she says, ''slowly and carefully,'' as slowly as ''she could to be walking along,'' was not per se negligence on her part. Nor can it be said that, under the rule of general application controlling assumed risks, the facts of the case bring it within the doctrine of assumed risk, so as to preclude appellee of the right to a recovery.

While it is admitted by her that she knew of the presence of the oil on the floor, this admission does not necessarily or conclusively establish that she, by reason thereof, knew the floor was dangerous or unsafe to walk on. Even if she did see the oil on the floor, it was at that time exclusively in its control and was being used by appellant in its business. She had the right as an invitee to walk on it while making her purchase and to assume that it was reasonably safe for her to do so, and, while so doing, to exercise ordinary care for her own safety. The floor was the only means provided by appellant for the purpose for which she was using it at the time she received her injuries. The danger of her falling by reason of the presence of the oil on it was not such an obvious one that an ordinarily prudent person, exercising ordinary care for his own safety, would not have walked on it for the purpose of making a purchase

at the store.    Majestic Theater Co. v. Lutz, 210 Ky. 92, 275 S. W. 16.

We have held, in many cases, that the mere fact that the injured person was aware of the defective condition of a sidewalk was not per se negligence on his part to use it.    Town of Belleview v. England (Ky.) 118 S. W. 994; City of Henderson v. Dennis, 157 Ky. 192, 162 S. W. 820 and cases there cited.    See, also, Dipper v. Inhabitants of Milford, 167 Mas,. 555s 46 N. E. 122; Burrell v Greenville, 133 Mich. 235, 94 N. W. 732.

The reasons for the applicability of the law of these cases apply particularly to the facts proven in the present one.    If the appellee in this case exercised ordinary care for her own safety while walking on the floor although she admits she observed the presence of the oil on it she was not thereby guilty of such contributory negligence, nor did she thereby assume such risk, as to warrant the court in giving to the jury a peremptory instruction to find against her.    The instruction offered by appellant, hereinbefore quoted from, is a preclusion of the appellee's right to a recovery, if the jury believed from the evidence that she had knowledge of its condition, even though she was at the time exercising ordinary care for her own safety.    The effect of giving this instruction would have been equivalent to giving the jury a peremptory, for the reason that the evidence showing she had knowledge of the presence of the oil on the floor was not disputed.    The instructions given by the court properly and fairly presented the issues, and the court committed no error in giving them to the jury, nor in refusing those offered by appellant.

On the whole record, we are convinced that appellant has received a fair and impartial trial, and that the law of the case was correctly given to the jury.

Wherefore the judgment is affirmed.