**H. F. HOHLT CO. v. ROUTT et al.**
No. 9643.

Court of Civil Appeals of Texas. Galveston.
Jan. 20, 1932.

Rehearing Denied March 24, 1932.

C. G. Krueger, of Bellville, and John F. Battaile and F. R. C. Brown, both of Houston, for plaintiff in error.

Mathis & Mathis, E. H. Cavin, and J. R. Thomas, all of Houston, for defendants in error.

GRAVES, J.

Pursuant to a jury's verdict on special issues, the defendants in error, Mr. and Mrs. Routt, between them, were awarded a total of $12,700 damages against the plaintiff in error, a private corporation of Brenham, Tex., as for its negligent failure to "use that degree of care which a person of ordinary prudence would have used under the same or similar circumstances to keep the floors of its place of business in a reasonably safe condition for persons lawfully thereon as invitees," which dereliction proximately caused Mrs. Routt, while in such capacity walking over them, to fall and receive serious bodily injuries, she being at the same time acquitted of any contributory negligence.

Inveighing in this court against that adverse determination below, the corporation urges: First, that the evidence heard failed as a matter of law to even raise an issue of liability on its part for Mrs. Routt's hurts; second, that procedural errors—all reversible in nature—were committed upon the trial in each of these particulars, (1) in generally charging the jury, the cause having been submitted on special issues, that the burden of proof was upon the plaintiffs to prove their allegations of negligence and damages, if any, by a preponderance of the evidence, and upon the defendant to likewise prove its averments of contributory negligence; (2) in submitting special issue No. 1, inquiring: "Was the defendant, H. F. Hohlt Company, negligent in failing to use that degree of care which a person of ordinary prudence would have used under the same or similar circumstances to keep the floors of its place of business in a reasonably safe condition for persons lawfully thereon as invitees?" over the objection, among others, that "such issue is a charge upon the weight of the evidence and assumes that defendant did fail to use the care there referred to, and only submits the query as to whether such failure was negligence, when as a matter of law it would be negligence"; (3) in submitting special issue No. 2, asking, "Was such negligence (that inquired about in issue number 1) the proximate cause of the injury, if any, sustained by plaintiff, Mrs. Lulu Routt," and in presenting in connection therewith a definition of proximate cause, which told the jury that "the test of whether an act may be deemed the proximate cause * * * is simply whether in the light of all the attending circumstances, the injury * * * ought to have been anticipated as a consequence of such act."

The first contention is overruled. It uncontrovertedly appeared that Mrs. Routt was not only a patron in the store on this occasion—hence was due the use of ordinary care on the merchant's part toward keeping the floors therein reasonably safe for her accommodation as such, Kroger Grocery & Baking Co. v. Monroe, 237 Ky. 60, 34 S.W.(2d) 929; Majestic Theater Co. v. Lutz, 210 Ky, 92, 275 S. W. 16; Laurie Company v. McCullough, 174 Ind. 477, 90 N. E. 1014, 92 N. E. 337; Bennett v. Railway, 102 U. S. 577, 26 L. Ed. 235—but that she fell on and to the ground floor near the center of the building through her foot having slipped or skidded out from under her for a distance of near 24 inches and plainly marked the floor, at a place where it was dark or poorly lighted, suffering in consequence serious bodily injuries. This same floor had been there in use for 10 or 12 years, during the whole of which time the company had used on it once a day a preparation or compound known as "floor-sweep," which had been put on about two hours before Mrs. Routt so fell, and had in addition been oiling it since about 1914, having within the 15 years immediately preceding this accident oiled or greased it all over about three or four times, the last one being at least a year prior, so that at this time it was very clean and had a highly polished finish.

There was further testimony to the effect:

That the sweeping compound kept the dust down, after the infrequent oilings or greasings had been made, as above detailed. That it also had a tendency to dampen the floor, at least for a brief time after being put on. Some of it in use in the store at the time of the trial was produced and offered in evidence in a paper sack it had been in approximately 10 minutes, when one of the company's firm members said of it: "That would make grease on your hand; yes, but after it is on the ground, or on the floor, it gets dry." The same witness further said: "They (customers) slip, yes, they slip anywhere. They make a misstep sometime and slip, or have a loose heel sometime slip. As to my knowledge of anybody slipping and other people slipping in the store, I didn't see them—I saw them slip. They didn't fall; they make a misstep and slip. That can happen anytime. As to whether I have known them to slip in the store. Slip but don't fall. I could not mention names. I have seen girls sometime make a slip like they would fall but they didn't fall."

Mrs. Routt testified: "I went in shopping and I left one counter to go to the other side of the store, and in going down the store my foot slipped on the floor and I fell and struck my hip. * * * I fell because I slipped. To explain how it happened: I was walking down the store and my foot just slipped right out from under me, it skidded, and I could not re-

gain my balance and I fell on that hip and broke that hip. As to whether there was anything that called my attention to the slipping, how my foot slipped—to detail how that accident happened: I am sure it was from the grease spot on the floor. What makes me believe that is from the way I slipped."

Another lady customer in the store at the time testified: "I could see the mark on the floor very plainly where she had slipped. * * * I did not see anything on the floor to have caused Mrs. Routt to fall other than the polish finish on the floor."

While there was no direct evidence that the place in the floor where the fall occurred was then actually slippery and dangerous, that was not an unwarrantable deduction from all the facts and circumstances before the jury, its age and highly polished state, as well as the long-continued use thereon of the two substances that probably both contained grease, being admitted; in other words, it was one of those inferences they might legitimately draw from what was before them, as was also the further one that such a condition could both have been previously known to and remedied by the store company through its due exercise of the precautions an ordinarily prudent person would have used in the same circumstances looking toward the reasonable safety of customers expected to walk over it.

■■ Neither the averments nor the evidence restricted the reaches of the cause of action as alleged and prosecuted to the existence of a particular grease spot on the floor, as opposing arguments urged; rather must it be regarded, as against only the general demurrer preserved here against it, as grounded upon the comprehensive charge that the floor in general, and especially in the area where Mrs. Routt fell, had negligently, through the above-stated manner of its maintenance, been permitted to be, become and remain slippery, greasy, or oily, and dangerous to walk upon, the particular place of the fall having also been so dark and poorly lighted at the time that she could not see, or discover, such dangerous and slippery condition. While not even Mrs. Routt herself said she actually saw any grease spot, her quoted statement plainly being at least susceptible of the mere meaning that she felt sure of having stepped on a slippery place like a grease spot, because of the way she had slipped; that is, her foot had skidded out from under her for a distance of 24 inches. To say the least, therefore, of the resulting legal effect of this state of evidential facts and circumstances referred to, it did raise for the jury a question of liability against the plaintiff in error, according to the measure of the duty it owed Mrs. Routt, as laid down in the authorities cited, supra. Neither can the criticism of the charge on the burden of proof be upheld; upon a state of facts not in legal purport different from

that here obtaining, the Commission of Appeals seems to have decided this question favorably to the trial court's action in Houston & T. O. Railway Co. v. Stevenson (Tex. Com. App.) 29 S.W.(2d) 995, 999; see, also, Commercial Standard Insurance Company v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105, 1108, American Fidelity & Casualty Company v. Williams (Tex. Civ. App.) 34 S.W.(2d) 396, 405, Sanger v. Bank (Tex. Civ. App.) 170 S. W. 1087, 1092. The attack upon special issue No. 1, however, is obviously unanswerable, in that it assumed that plaintiff in error was guilty of negligence in the matter inquired about, the question of whether or not there had been a failure on its part to exercise the proper degree of care touching it not being submitted at all. This court agrees with this comment thereon in its brief:

"The trial court might just as well have said to the jury:

" 'The defendant failed to use that degree of care which a person of ordinary prudence would have used under the same or similar circumstances to keep the floors of its place of business in a reasonably safe condition for persons lawfully thereon as invitees. Was this or was it not negligence on the part of the defendant?' " M., K. & T. Ry. v. Wolf, 40 Tex. Civ. App. 381, 89 S. W. 778. Hines v. Popino (Tex. Civ. App.) 235 S. W. 1095.

■■ The majority of this court, without concurrence of this member, hold that prejudicial error was committed also in the definition of "proximate cause" given in the setting here existing, in that it did not plainly recite that the·act complained of—to constitute a proximate cause of the injury suffered—must have been one but for which that injury would not have occurred, instead of running as follows: "You are further instructed that by proximate cause is meant the efficient cause, the one that necessarily sets the other cause in motion. The test of whether an act may be deemed the proximate cause of an injury is simply whether in the light of all the attending circumstances, the injury was such as ought to have been anticipated as a consequence of such act."

As authority for this conclusion, they cite the case of Cameron Compress Company v. Jacobs (Tex. Civ. App.) 10 S.W.(2d) 1040.

If other errors were committed, they are not such as will probably occur upon another trial; for those pointed out, the judgment has been reversed and the cause remanded.

Reversed and remanded.

PLEASANTS, C. J.

I concur in the conclusions expressed in the opinion of Justice GRAVES filed in this case, as to the two questions upon which the judgment of the trial court is reversed.

While not prepared at this time to dissent from that portion of the opinion which dis-

cusses and determines the other questions presented by appellant's brief, I deem it proper to say that I have grave doubts of the soundness of the opinion upon these questions.