## F. W. Woolworth Co. v. Brown.

(Decided Feb. 19, 1935.)

MACKOY & MACKOY for appellant.

NORTHCUTT & NORTHCUTT and E. R. RIVARD for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellee, Tillie Brown, brought this suit in the Kenton circuit court to recover damages for personal injury received by her by falling on the floor in appellant's store.

She alleged in her petition, in substance, that on the 19th day of October, 1933, she entered defendant's store for the purpose of making a purchase of merchandise. Upon entering the store, she proceeded to a counter on which soap is kept for sale, and, as she reached the counter or a point near the counter, her foot slipped on some wet or oily substance which by and through the carelessness and negligence of the defendant was permitted to remain on the floor of the store, the presence of which was known to defendant or by the exercise of ordinary care could have been known, causing her to fall with great force and violence to the floor. She described the nature and extent of her injuries as a result of the fall, and prayed judgment for the sum of $5,000. However, later by amended petition she modified the prayer of her original petition and asked that she recover the sum of $3,000.

Appellant, defendant below, filed its answer, in which it denied the material allegations of plaintiff's petition, and pleaded contributory negligence. A trial was had, and resulted in a jury verdict and judgment thereon for the sum of $1,000 for appellee.

Appellant filed motion and grounds for a new trial, consisting of a number of alleged grounds for reversal, but only a part of which is insisted upon in brief for appellant, to wit, (1) the evidence is insufficient to support the verdict; and (2) the trial court erred in overruling appellant's motion for a peremptory instruction.

The pertinent part of appellee's testimony with respect to her fall was, in substance, as follows:

"Q. Now please tell the jury and the court, if you can, just what occurred. Describe the accident. A. Well, I entered the store around four o'clock to make a purchase. I was going to the soap counter and just as I was right to it, almost to it, my foot slipped and I fell very hard on the floor, and of course, when I got up—.

"Q. Now, you say you fell to the floor. Did you get up or someone assist you? A. Well, two men came to my assistance and helped me.

"Q. Now, as to the condition of that floor, you know what your foot slipped on? A. Well, of course, I couldn't just say. It seems that I felt like it was an oily substance as my foot slipped. * * *

"Q. Did you see the floor at the time you fell? A. No, sir. I didn't.

"Q. I don't mean by that, did you see it,— I mean, did you examine the floor? A. No, I didn't examine it:"

On cross-examination appellee testified as follows:

"Q. Mrs. Brown, you say you didn't see any oil there when you fell? A. No, I didn't. * * *

"Q. Well, did you notice at any point along the fifteen feet that you walked that day that the floor was at all slippery? A. No.

"Q. The only slippery point you say you detected was where you fell? A. Yes, sir. * * *

"Q. Are you able to describe the nature of the spot on your stocking? A. Well, it was dark looking and more like a floor wax, I would judge something like that.

"Q. It wasn't oil then? A. Well, I couldn't say what it was, but it was more than dirt."

John E. Goodpaster testified that he was in the store at the time of the accident and had passed over the floor at about the same place; that he did not notice the floor at the place where appellee fell until after she had fallen. He was asked to describe the condition of the floor, and he said:

"A. Well, the floor, at least in my judgment, had been oiled and of course, there was evidence on the floor of it having been oiled.

"Q. What was on the floor? A. Oil, floor oil."

He said that, as he was walking toward the sandwich counter, he heard the "commotion" of some one falling, and looked around and she was lying there in front of the soap counter, and some ladies were helping her up. He said he heard some one in the crowd speak of the floor being in an oily condition and as being dangerous. Appellant's counsel objected to the witness testifying to the remarks made by bystanders, and the court said:

"Overruled for the time being until it is ascertained that it is an incorrect question and the court will instruct the jury not to consider it."

Exceptions were taken to the court's ruling, but the record does not disclose that the court made further ruling on the objections nor that counsel made further insistence on a ruling. Goodpaster said that, after appellee had fallen, he noticed the presence of oil on the floor where the floor had been oiled with ordinary floor oil.

Blaine Shepherd testified that he was in the store on October 18th, the day previous to the time of appellee's accident, and, while he was walking down the aisle past the soap counter, his foot slipped, and he almost fell and wrenched his back in striving to stay on his feet, and hurt his back considerably. Counsel for appellant moved to strike the answer, and the court ruled: "The testimony as to the condition of the floor may remain in, but sustained as to the injury to the witness." Defendant excepted to the ruling of the court. There was considerable testimony tending to show that the floor indicated it had been oiled some time previous to the appellee's accident, and along the aisles where the public walked frequently it appeared that the oil was worn off to some extent, but there was presence of more oil near the edge of the counters. In view of this testimony, we think Shepherd's testimony with respect to the slippery condition of the floor the day previous was competent. But the court properly sustained objections to the witness' testimony with respect to his injury. The witness said he did not very closely notice the condition of the floor and could not say just what it was he stepped on, but that it was "some kind of smear masked on the floor." He later described it as indicating candy, soap, or banana peel, but he did not say that it was not oil. He said when he slipped he had some difficulty in keeping from falling, and it attracted the attention of the people, and he was embarrassed and hurried out of the store without giving any particular attention to the condition of the floor, and did not attempt to ascertain just what caused him to slip.

The above is, in substance, the testimony produced for plaintiff.

The store manager for appellant and other employees of the store, including the janitor who cared for the floor, all testified that there was no oil on the floor, and that it was not the custom or habit of appellant to oil the floor. The janitor said that he used a combination of sawdust and sand on the floor, and that he never at any time put any kind of oil on the floor. They all testified that, if there was any substance on the floor that caused appellee to fall, they had no knowledge or information of it being there.

The preponderance of the evidence tends to show that the floor was in a slippery condition, and that appellee stepped on something slick or slippery, causing her to fall, but, as to whether or not there was oil on the floor, the evidence is sharply conflicting. If appellee was caused to fall by stepping on a banana peel, soap, or candy, or other substance, which may have been placed on the floor by some one or by accident by falling from the counter or otherwise a short while before the accident, there was no evidence tending to show that appellant's agents and employees had notice of its presence on the floor, and therefore no negligence shown on the part of appellant in that respect. But, on the other hand, if the floor had been oiled as testified to by the witness Goodpaster, there is no escape from the conclusion that appellant's employees put the oil on the floor. The evidence is sufficient to warrant the jury in finding that there was oil on the floor and that it was the proximate cause of the accident.

The facts in the case of Kroger Grocery & Baking Co. v. Monroe, 237 Ky. 60, 34 S. W. (2d) 929, 931, are very similiar to the facts in the case at bar, wherein we said:

"Appellant had a right to oil the floor of its store. It was not an insurer of appellee's safety while using its floor. But, it was its duty, after oiling it, to use ordinary care, that is, that degree of care usually exercised by an ordinarily prudent person engaged in the same line of business, to maintain its floor in a reasonably safe condition for the use of its customers while using it when making their purchases of its goods. It was likewise the duty of appellee to exercise ordinary care, that is, that degree of care usually exercised by ordinarily prudent persons under circumstances

like or similar to those under which she was at the time using the floor while making her purchase, for her own safety. The observing by her of the presence of oil on the floor and walking thereon, as she says, 'slowly and carefully,' as slowly as 'she could to be walking along,' was not per se negligence on her part. Nor can it be said that, under the rule of general application controlling assumed risks, the facts of the case bring it within the doctrine of assumed risk, so as to preclude appellee of the right to a recovery.''

It has 'been held that the mere oiling of a floor is not per se negligence; but this does not mean that a floor or other premisis may not be kept in a reasonably safe condition for those who have the right to use them. Merchant and customer stand in the relation of invitor and invitee, and, while the invitor is not an insurer of the safety of those who may use his premises, yet the invitor must keep his premises in a reasonably safe condition for the purpose of its intended use. Cincinnati Base Ball Club Co. v. Eno, 112 Ohio St. 175, 147 N. E. 86; Kroger Grocery & Baking Co. v. Monroe, supra.

Appellant files with its brief a certified copy of an opinion of the Supreme Court of Ohio in the case of J. C. Penny Co. v. Robison, 128 Ohio St. 626, 193 N. E. 401, 404, wherein the facts are substantially the same as in the case at bar: The Ohio court held that the plaintiff below had shown no right of recovery. The court in that opinion recognized the rule that a storekeeper owes to his customer shopping in his store the duty to exercise ordinary care to have and keep his store-room in a reasonably safe condition, but denied a recovery upon the ground that the plaintiff failed to show any negligence of the defendant. The facts in the Ohio case, supra, showed that the rubber tap on the heel of Robison's shoe was removed in the fall, and, in commenting on this incident, the court used this language:

''Is it not as reasonable to infer that the removal of the rubber tap of the heel of the shoe worn by Mrs. Robison at the time of the fall was the proximate cause of the slipping that produced the fall?''

However, Mrs. Robison based her cause of action upon the slippery condition of the floor by the use of floor oil. But the court seemed to give considerable weight to the circumstances of the removal of the shoe heel indicating that it was probable that Mrs. Robinson caught the heel of her shoe on the stairway which she was using at the time of her fall, and that this was the cause of her fall instead of slipping on the floor. And the court made this further comment respecting the evidence:

> "Thousands of people patronized this store every day. No one else is shown to have fallen there. No one claims that any one else ever fell by reason of the oiling of the floors * * * and the evidence does not fairly disclose any extraordinary condition; for it is difficult to spell out from the plaintiff's testimony that there was anything more than a discoloration of a space on the floor with oil."

But we have none of the above conditions in the case at bar. There is no evidence tending to show that the appellee was caused to fall by stumbling or catching her shoe heel on the floor or otherwise than that she slipped on the floor. And it is shown by the witness Shepherd that he had slipped on the same floor at approximately the same place the day previous to appellee's accident. The Ohio court did not determine the Ohio case solely on the circumstances above mentioned, but it is obvious that in weighing the testimony the court gave those circumstances considerable weight.

The rule that the courts will not reverse the finding of a jury as being flagrantly against the evidence, if there is even any substantial probative evidence sustaining the verdict (Iseman v. Hayes, 242 Ky. 302, 46 S. W. [2d] 110, 85 A. L. R. 996), is too well known to require an elaboration or extensive citation of authority. The witness Goodpaster testified clearly and positively that the floor at the point where appellee fell was covered between the counters with floor oil, and in this he is corroborated, at least circumstantially, by the evidence of Shepherd and appellee. In view of this evidence, we are unauthorized to say that the court erred in submitting the case to the jury or that the verdict is flagrantly against the evidence.

Appellant makes no complaint about the instructions. However, we may say in passing that an examination of the instructions convinces us that they very aptly submitted to the jury the respective duties of appellant and appellee. The court instructed the jury, in substance, that it was the duty of appellant to use ordinary care in keeping its floor in a reasonably safe condition for its customers, and, it was the duty of appellee to use ordinary care for her own safety. All phases of the case with respect to both the law and the evidence were very admirably presented to the jury in the instructions. The jury was the judge of the evidence, the weight to be given thereto, and the credibility of the witnesses, and, being guided by appropriate instructions, we are unauthorized to disturb its finding.

Wherefore the judgment is affirmed.

The whole court sitting.