**WAL–MART DISCOUNT CITY, Appellant,**

v.

**Ulis MEYERS, Appellee.**

**No. 86–CA–1840–MR.**

Court of Appeals of Kentucky.

Oct. 2, 1987.

Discretionary Review Denied by Supreme Court Nov. 17, 1987.

William A. Watson, Middlesboro, for appellant.

Michael D. Bowling, Middlesboro, for appellee.

Before DYCHE, GUDGEL and WILHOIT, JJ.

GUDGEL, Judge:

This is an appeal from a judgment entered by the Bell Circuit Court in a "slip and fall" case. The jury awarded appellee, a store customer, $30,281 in damages for personal injuries sustained by him based upon its finding that appellant, the store owner, was 100% at fault. Appellant contends that the court erred by failing to grant its motion for a directed verdict, and by failing to grant its motion for a new trial on the ground that the instructions were erroneous, the verdict excessive, and the jury guilty of misconduct. We disagree with all of appellant's contentions. Hence, we affirm.

On January 20, 1985, appellee entered the Wal-Mart store located in Middlesboro. At the front of the store there is an enclosed area which has entry doors at each end. This area is enclosed in glass and has a dropped ceiling, ceiling fans, fire sprinklers, and a tile floor. On the occasion in question, carpet-surfaced rubber floor mats were located at the threshold of each outer door. Benches, vending machines, and games of various types are located in the area. According to appellee's employee, the area is of such a size that it takes him twelve to fifteen strides to walk across it from door to door. As noted by the witness: "It is a good sized area."

Appellee testified about the incident as follows:

A Yes, sir, it was on a Sunday evening and it was real cold and I was going out to Wal-Mart to get a heater, because it was going to be cold and I thought we might need a heater. I went out to Wal-Mart to get a heater. As I went in at the door to enter the store, there was a gentleman standing at the door and he had a broom or mop one. I don't know which it was, but he had something in his hand. He had the door open and he said, "I'm sweeping water out the door." I walked on it and just got by him about 3 or 4 steps and my feet went forward and I went straight back and landed on my back.

8. Now, Mr. Meyers, when the fellow told you that he was sweeping, what did you take that to mean?

A Well, I just thought he was being friendly. He didn't tell me not to go in or anything. He just said, "I'm sweeping water," that is all he said to me.

9. When he mentioned that water may be on the floor,—did you—were you careful or did you walk on forward in there, or what did you do?

A I just walked up normal and I made about 3 or 4 steps and it must have been a real cold day and it must have been froze into ice—.

. . . .

A —and my feet just went forward.

. . . .

A It must have been real slick and it had to be ice. It was freezing, freezing cold, and I would say it was ice and my feet, both of them just went out like that—.

. . . .

A Well, I didn't see anything. I didn't see anything that was dangerous. I didn't see anything.

10. Now, Mr. Meyers, how did you land on the floor?

A I went straight backwards and hit on my back mostly on the left side, the left shoulder.

11. Did you get up by yourself?

A Yes, sir, he come to me and asked me—.

12. Who is "he?"

A The gentleman that was sweeping the water out. He come to me and asked me if I was hurt and I said, "I don't know." I got up off of the floor and went back and got into my car.

13. Did you put your hand on the floor?

A It was slick, yes, sir, it was slick.

14. What did you feel? Did you feel anything?

A It was cold and it felt like ice. It was slick. The floor was slick.

. . . .

11. So, for you to tell the jury today or suggest to the jury that there was ice there, is a just a conclusion on your part, it it not?

A Well, I guess. It was a cold day. It was freezing cold and, after I went on by him, I would say it might have froze into ice. It was slippery.

Appellant's employee, by contrast, testified in pertinent part as follows:

A Well, I was in the front vestibule. Mrs. John, who is in charge of the store, was on duty at that time and she had asked me to clean up the front, which there had been a few customers in. It was extremely cold weather, perhaps, it was 13 below zero. Not too many employees could make it in. I was the only male factor present and that is why (I am normally a cashier) and she asked me to do these duties, which it didn't offend me to do, because I have done this type of work all my life and I am not ashamed to do it. I am proud to know that I can do the work. But what I recall was that I was out there cleaning up. I had first cleaned up the front, which some snow had been carried in, and I had walked on out into the vestibule with a broom and I had been sweeping up snow and I saw Mr. Meyers come into the door and he had gotten a short way in and he fell all the way down to the floor.

. . . .

23. And what was it there on the floor that you were sweeping with that broom?

A Surface snow that had packed on customers' feet, the soles of their shoes, in other words. You've seen a dry type snow? Well, that was the kind of snow we had and it was being carried into the vestibule, which you can't prevent it, you know, you are open. Some shoes collect it more than other shoes and, when you walk in on a tile floor, wet or dry, you are going to slip up and fall, if you are not very careful.

. . . .

1. Mr. Rutherford, isn't it true, that where Mr. Meyers slipped and fell, the mat only goes for a short distance, and it just becomes tile floor, isn't that true?

A That is true, the mat is just a certain length and, perhaps, he had walked off the mat with the snow on his feet and then shortly after he hit that tile floor he fell all the way down to the floor.

2. That tile floor is slick, when you have water on it, isn't it?

A This tile floor didn't have water on it. If it had water out there, it wouldn't have been water. I couldn't even, just a mop because it was that cold. Anything liquid at that time would have been ice.

3. So basically it had to pretty well be ice in there, isn't that right?

A Well, this was dry snow, because it wasn't—. If it was warm enough, Mr. Bowling, for the snow to have melted, there would have been water, but it wasn't that warm. It was 13 degrees below.

4. So you just basically, I guess, Mr. Rutherford, you were there by yourself and you were doing about the best you could to try to keep it clean, but really you could have used some more help, isn't that true?

A Well, for that particular job, I did often before do the job.

5. In other words, you just weren't able to keep the snow and ice that was being brought in there, you just didn't have enough help to keep it up?

A Oh, it would have taken one or two people constantly busy cleaning shoes to stay in the vestibule, true.

Appellant argues first that the court erred by denying its motion for a directed verdict. We disagree.

Appellant cites *Curtis v. Traders Nat. Bank*, 314 Ky. 765, 237 S.W.2d 76 (1951), and *Fisher v. Hardesty*, Ky., 252 S.W.2d 877 (1952), in support of its argument. In *Curtis*, the plaintiff fell on the slippery marble floor of a bank vestibule. There were inner doors leading from the small vestibule into the bank's main room, and a rubber mat was located inside those doors. However, there was no mat in the vestibule, and the bank made no attempt to frequently mop up the water which accumulated in that area. The court affirmed a directed verdict for the bank. In doing so, however, the court specifically declined to determine whether the bank was negligent by failing to have a mat in the vestibule, or by failing to frequently mop up the accumulated water. Instead, the court chose to hold that the plaintiff, by using the vestibule in the condition it was in, assumed the risks incident to its use and hence, was contributorily negligent as a matter of law.

In *Fisher*, the plaintiff fell in a drug store's entrance vestibule as she exited the store. Apparently a thin sheet of ice had formed on the floor after a porter mopped the area. The plaintiff, the only witness, testified as follows:

> She said she stood on one side of the entrance to the store while the porter finished mopping the vestibule. Yet, she said she made no examination of the vestibule at the time to determine whether it was either wet or ice-coated. Finally, when she entered the store, she stated she did not look at the floor but kept her gaze directly ahead of her on the door. She admitted the floor was wet inside the store, but she walked over it nevertheless, and in doing so got her shoes and particularly her heels wet, so that when she went out on the vestibule again her wet shoes or heels, or both, instead of ice, could easily have caused her fall.

*Id.* at 879, 880. Based on this testimony, the court concluded that the plaintiff was contributorily negligent as a matter of law.

■ The *Curtis* and *Fisher* decisions, contrary to appellant's contention, are not an impediment to appellee's recovery in the instant action. In the first place these cases do not, as appellant suggests, establish some type of special rule of nonliability applicable to store vestibules. Rather, the court's holding in both cases was that the plaintiff was contributorily negligent as a matter of law. In neither case did the court determine whether the store owner could be adjudged liable for failing to keep the vestibule floor in a reasonably safe condition. We expressly reject appellant's argument that store owners should not be held liable for failing to maintain store vestibules and entrances in a reasonably safe condition.

■ More importantly, the evidence adduced in the instant action shows that appellee entered the store's outside door, crossed over a rubber mat located there, and took some steps before falling, as well as that the location where he fell is utilized by appellant in its merchandising efforts and its use by customers is invited and encouraged. Given this location's design, size, and utilization, it can hardly be classified as a small entry vestibule area like those involved in the *Curtis* and *Fisher* cases. Hence, we conclude that the area in which appellee fell is one which appellant has a legal duty to maintain in a reasonably safe condition. Further, we note that given this jurisdiction's adoption of a pure form of comparative negligence, the *Curtis* and *Fisher* decisions have obviously lost much, if not all, of their viability as controlling precedents.

■ In last analysis, we believe that this case is factually very similar to and is governed by the principles enunciated in *Lyle v. Megerle*, 270 Ky. 227, 109 S.W.2d 598 (1937). There, a store customer fell on melted snow or slush which had been tracked into a butcher shop. In reversing a directed verdict for the butcher shop, the court stated:

> A customer in a store may assume that the floor will be free from obstructions of a dangerous nature and from a slippery spot, although he may not walk blindly, irrespective of obvious danger. If, in fact, he sustains a fall, the question should be submitted to the jury whether

under the circumstances he was paying reasonable attention to the danger which might exist upon the floor; that is, whether he was exercising ordinary care for his own safety. *Kroger Grocery & Baking Co. v. Monroe,* [237 Ky. 60, 34 S.W.2d 929 (1931)] *supra,* and cases cited therein. Annotation, 100 A.L.R. 718.

We are of opinion that the jury should have been allowed to determine whether the condition was reasonably safe for the defendant's customers, and the defendant knew or ought to have known it; that is, whether he exercised ordinary care, and, as well, whether the plaintiff observed due diligence.

*Id.* at 600, 601.

The evidence adduced in the instant action, in our opinion, creates jury issues as to whether appellant adequately complied with its legal duty to maintain its store premises in a reasonably safe condition by making adequate efforts to clear its floor of ice and snow, and as to whether appellant in entering the store exercised ordinary care for his own safety. The mere fact that one of appellant's supervisors had sent an employee to attempt to clean up the area in which appellee fell compels our conclusion. In conformity with *Lyle,* therefore, we hold the trial court did not err by denying appellant's motion for a directed verdict.

Next, appellant argues that the court erred in its instructions to the jury by misstating the law and by imposing an absolute duty on appellant to keep its store floor free of ice or snow. We disagree. The instruction complained of merely informed the jury that appellant had a legal duty to maintain its premises in a reasonably safe condition for the use of its customers, including appellee. The instruction then further directed the jury to find for appellee only if it believed from the evidence that there was ice and/or snow on the floor which was a substantial factor in causing appellee to fall, and that appellant's employee knew or should have known of the presence of the ice and/or snow and failed to exercise ordinary care in removing it.

Appellant's argument that this instruction misstates the law is based on the same argument as that advanced concerning the court's failure to grant it a directed verdict. However, as noted earlier, we are of the opinion that appellant had a legal duty to maintain in a reasonably safe condition the area where appellee fell. Hence, we perceive no misstatement of the law in the instruction about which appellant complains. Further, we reject appellant's argument that the wording of this instruction somehow imposes an absolute legal duty on appellant. Based upon our review of the instruction, we find no basis for appellant's contention in this vein.

Next, appellant argues that the jury's verdict is excessive. We disagree. Viewing the evidence in the light most favorable to appellee, as we are required to do, we conclude that the evidence adduced amply supports the jury's award. That being so we are not free to set that award aside on the ground of excessiveness. *See Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984).

 Finally, appellant suggests, based solely on its counsel's previous experience in such cases and absent any factual basis whatever in the record for its allegation, that some unidentified person communicated with the jury and apprised its members of the exact amount of damages appellant wished to be awarded. It is further suggested that the jury, after receiving this improper communication, proceeded to engage in blatant misconduct and to award appellant precisely the amount of damages he desired, ignoring both the evidence and their oath to fairly and impartially try the case. Since there is no evidence or other basis in the record to support this claim, we reject it as meritless.

The court's judgment is affirmed.

All concur.